JOURNAL ENTRY and OPINION
{¶ 1} Defendant-appellant Robert Shue appeals from his conviction for menacing by stalking. He argues that he was tried for an offense for which he was not indicted, that the evidence was insufficient to support his conviction, that the verdict was against the manifest weight of the evidence, that the court erred by conducting a bench trial, and, if any of these issues were not fully preserved, that his attorney provided ineffective assistance. We find no error in the proceedings below and affirm the court's judgment.
 a. Facts and Procedural History {¶ 2} Appellant was charged with menacing by stalking in a single count indictment filed August 25, 2003. He pleaded not guilty to this charge. Appellant sought and obtained a bill of particulars and discovery in this matter, both of which were supplemented before trial.
 {¶ 3} The case was called for trial on October 23, 2003. The indictment was amended, without objection, to state that on or about July 30, 2003, appellant, "[b]y engaging in a pattern of conduct, did knowingly cause [the victim] to believe that [appellant] would cause physical harm or mental distress to [the victim]. Furthermore, in committing the offense, the offender trespassed on the land or premises where [the victim] lives and/or while committing the offense, the offender had a deadly weapon, to wit: knife on or about his person or under his control."
 {¶ 4} Appellant's counsel then informed the court that appellant elected to waive his right to a jury trial and presented the court with a signed written waiver. On the court's inquiry, appellant stated he understood his right to a trial by jury, and denied that any threats or promises had been made. The court inquired whether the signature on the waiver form was appellant's, and appellant said it was. The court then accepted the waiver and recessed to allow the waiver to be filed and recorded by the clerk. The waiver was filed that same day, October 23, 2003.
 {¶ 5} At the trial, the victim testified that she met appellant in March 2003. He was a customer at the bar where she was employed. She dated him for two or three months. She said that appellant became very possessive and angry after he lost his job. He began calling her incessantly. In the first incident of violence, appellant and the victim got into a fight in a car after she spoke to other men in a bar. Appellant pushed the victim out of the car and into gravel on the side of the road.
 {¶ 6} On June 7, 2003, appellant and the victim went to the Legends bar in the Clarion Hotel in Middleburg Heights, Ohio. They got into a fight there. Appellant yelled at the victim. He also took her cellular telephone and broke it. The victim ran out of the bar and hid under a truck. Appellant kicked a dent in the victim's car. Both appellant and the victim were taken to the police station.
 {¶ 7} In another case, the victim went home after going out with friends, and appellant choked her, pulled her hair, pushed her head into the bathtub and threatened to kill her. In yet another incident, the victim went to a concert with a girlfriend, and returned home and went to bed. Appellant broke into her apartment, threatened to kill her and hit her head on the floor. She called the police and made a statement about what occurred.
 {¶ 8} After this incident, the victim would not return to her apartment. She stayed at hotels or with friends. She moved from the apartment two weeks later. She transferred employment from Elyria to a bar in Cleveland Appellant continued to call her repeatedly and left messages for her which were alternately loving and then hateful.
 {¶ 9} On July 30, 2003, the victim was staying at the Comfort Inn in Independence, Ohio. She checked out at approximately 11:30 a.m. As she left, she saw appellant standing outside. She was frightened. She returned to the front desk and requested an escort to her car. The front desk called the police for her. Appellant came into the hotel and began yelling. He blocked the victim against the wall. She stayed on the telephone with the police until they arrived on the scene. The police took appellant outside then took a statement from the victim.
 {¶ 10} Orman D. Elkins, the maintenance man at the Comfort Inn, testified that he arrived at work at 6:30 a.m. on July 30, 2003. The desk clerk told Elkins there was a man roaming the halls of the hotel looking for his wife's room. The desk clerk asked Elkins to find the man and ask him to wait outside. Elkins was unable to locate the man in the building. However, the general manager of the motel, Anna Seget, testified that appellant came to the desk at around 7:00 a.m. and asked for his wife's room number. Seget declined to give it to him. Seget did call the room, but there was no answer. Appellant then went outside.
 {¶ 11} Elkins saw appellant outside between 7:00 and 7:15 a.m. Appellant reiterated that he was looking for his wife. Elkins told him that he would have to wait outside, and that he could not go through the hallways. Seget said that appellant came back to the desk about an hour later and asked for his wife's room number again. A desk clerk gave him the same response she had given him earlier. Elkins saw appellant leave the premises in a late-model car at 8:30 or 9:00 a.m.
 {¶ 12} At approximately 12:00 noon, the victim came to the front desk and asked them to call the police because someone was looking for her and she was frightened. Seget provided the victim with an outside line to the police on the house telephone. While the victim was on the phone with the police, Seget heard loud noises. She went out by the house telephone and saw appellant talking loudly to the victim. The victim was crying. She asked them to take their dispute outside. As the victim began to move, appellant put his hands on either side of her. The police then arrived. Seget did not hear appellant threaten the victim.
 {¶ 13} Patrolman Michael Schreiber testified that he and Patrolman Kurtz responded to a domestic violence call at the Comfort Inn on July 30, 2003 at approximately 11:58 a.m. When they arrived, Patrolman Schreiber found appellant standing in an alcove with his arms extended at shoulder height. He was standing in front of the victim. Patrolman Schreiber asked appellant to go outside with him, and appellant complied. Before he placed appellant in the patrol car, he asked appellant if he had any weapons or drugs; appellant told him he had a knife. Patrolman Schreiber collected the knife from appellant's front pocket. It had a three and one-eighth inch blade.
 i. Law and Analysis {¶ 14} Appellant first argues that he was tried for an offense for which he was not indicted because "the indictment was expressly limited to a pattern of conduct that occurred entirely on July 30, 2003," but the evidence concerned a pattern of conduct beginning in early June and ending on July 30, 2003.
 {¶ 15} The indictment charged appellant with menacing by stalking, in that "on or about" July 30, 2003, appellant "by engaging in a pattern of conduct, did knowingly cause [the victim] to believe that [appellant] would cause physical harm or mental distress to [the victim]." The term "pattern of conduct" is defined by R.C. 2903.21.1(C)(1) as "two or more actions or incidents closely related in time, whether or not there has been a prior conviction based on any of those actions or incidents."
 {¶ 16} In our view, the pattern is an element of and a precondition for the offense, but it is not part of the offense itself. "Although the past acts utilized to prove the `pattern of conduct' requirement of R.C. 2903.211 assuredly contain the same elements, the acts themselves are not being re-prosecuted."State v. Werfel, Lake App. No. 2002-L-101 and 2002-L-102, 2003-Ohio-6958, ¶ 16. Rather, the pattern of conduct establishes how present behavior which is apparently innocent can be deemed threatening based on prior encounters between the parties. See, e.g., State v. Tichon (1995), 102 Ohio App.3d 758, 768; Statev. Bilder (1994), 99 Ohio App.3d 653, 658.
 {¶ 17} In the supplemental bill of particulars, the state informed appellant that the time period at issue was from June 2003 to July 2003. Therefore, appellant was aware that the state would be relying on evidence from throughout that time period. We overrule the first assignment of error.
 {¶ 18} In his second assignment of error, appellant argues that the evidence was insufficient to support his conviction. "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Jenks (1991), 61 Ohio St.3d 259, paragraph 2 of the syllabus.
 {¶ 19} Appellant contends that there was no evidence of a pattern of conduct as alleged in the indictment, because only one incident occurred on the date cited in the indictment, and a single incident cannot constitute a pattern as a matter of law. As noted above, appellant was charged with knowingly causing the victim to believe that appellant would cause her physical harm or mental distress, "by a pattern of conduct." The past acts used to prove a pattern of conduct are not part of the offense itself, but are the means by which the offender's present conduct was made threatening to the victim. There was ample evidence that throughout June and July 2003, appellant physically and verbally threatened the victim and caused her mental distress by repeatedly calling her. This evidence was sufficient to establish a "pattern of conduct." Therefore we reject this argument.
 {¶ 20} Appellant also asserts that there was insufficient evidence to support either of the two allegations contained in the "furthermore" clause. Proof of either of these allegations elevate the level of the offense from a first-degree misdemeanor to a fourth degree felony. R.C. 2903.21.1.
 {¶ 21} Appellant argues that there was insufficient evidence that he had a deadly weapon on or about his person or under his control. He asserts that a knife is not a deadly weapon, citingState v. Cathel (1998), 127 Ohio App.3d 408. The issue inCathel was whether a knife was a deadly weapon for purposes of the crime of carrying a concealed weapon. The court held that a knife was not a deadly weapon in and of itself, but could be one if the state proved either 1) that the knife was designed or specifically adapted for use as a weapon, or 2) that the defendant possessed, carried, or used the knife as a weapon.[1] The question whether a defendant possessed, carried or used a knife as a weapon must be inferred from the totality of the circumstances surrounding the crime.
 {¶ 22} The knife itself is not included in the record on appeal. The transcript of the trial proceedings included only a limited description, that it had a 3 1/8 inch blade and was very sharp, and was the type of blade that would be used to gut a deer. It is not clear whether the knife was sheathed, or what actions, if any, would be needed to make it useable. However, appellant was at the hotel to find the victim; he had threatened to kill her in the past. Appellant also admitted that he was carrying a weapon when the police inquired. The jury could reasonably infer from this testimony that appellant carried the knife with the purpose of using it as a weapon.
 {¶ 23} Therefore, we overrule the second assignment of error.
 {¶ 24} Appellant's third assignment of error contends that the verdict contravened the manifest weight of the evidence. In assessing the weight of the evidence, this court must review the entire record, weigh the evidence and all reasonable inferences from the evidence, consider the credibility of the witnesses and determine whether, in resolving conflicts in the evidence, the factfinder clearly lost its way and created such a miscarriage of justice that the conviction must be reversed and a new trial ordered. State v. Thompkins (1997), 78 Ohio St.3d 380, 387;State v. Martin (1983), 20 Ohio App.3d 172, 175. Reviewing the record as a whole, we cannot say that the factfinder clearly lost its way or created a manifest miscarriage of justice. Therefore, we overrule the third assignment of error.
 {¶ 25} Fourth, appellant asserts that the court erred by conducting a bench trial in this case because the court did not strictly comply with R.C. 2945.05. He claims his written waiver of a jury trial was invalid because it was not signed in open court. "R.C. 2945.05 does not require a contemporaneous execution of the jury waiver form in open court, but only that the waiver be in writing and `be made in open court after the defendant has been arraigned and has had opportunity to consult with counsel.'"State v. Hogue, Cuyahoga App. No. 83483, 2004-Ohio-3871, ¶ 8. The transcript shows that appellant signed the waiver form prior to trial, that he specifically acknowledged to the court that his signature appeared on the waiver, that he understood his right to a jury trial, and that he agreed that the decision to waive a jury trial was his own decision. This constituted full compliance with the statute. Id.; State v. Franklin, Cuyahoga App. No. 81426, 2003-Ohio-2649, ¶¶ 12-14.
 {¶ 26} Appellant also argues that the journal entry setting forth the waiver was not filed until after the trial ended. We disagree. The written waiver, together with the court's written acceptance of the waiver, were filed on October 23, 2004, the date trial began. Therefore, "even if there was a rule stating that the waiver of the right to a jury must be filed before the commencement of trial, the record shows that it was filed; that is, indorsed with the stamp of the clerk of the court, on * * * the same day that trial commenced." Hogue, at ¶ 6. We overrule the fourth assignment of error.
 {¶ 27} Finally, as a precautionary matter, appellant urges us to conclude that his trial counsel provided ineffective assistance if we find that any of his prior arguments were not preserved for appeal. We have not concluded that any of appellant's arguments were not preserved for appeal. Therefore, this assignment of error is moot.
 {¶ 28} Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Corrigan, A.J. and Celebrezze, Jr., J. Concur.
[1] The statutory definition of "deadly weapon" at issue inCathel is not generally applicable to all crimes under Title 29 of the Revised Code; it is expressly limited to that term "as used in sections 2923.11 to 2923.24 * * *." Therefore, Cathel
is not directly applicable here. Nevertheless, we will rely upon the persuasive authority of cases construing the term "deadly weapon" as defined in R.C. 2923.11.