OPINION
{¶ 1} Defendant-appellant, Patricia A. Lawson, appeals from the judgment of the Franklin County Court of Common Pleas, whereby the trial court, pursuant to a jury trial, convicted appellant of menacing by stalking with trespass, menacing by stalking an *Page 2 
individual with a protection order, and violating a protection order while committing menacing by stalking without trespass. For the following reasons, we affirm.
 {¶ 2} On February 17, 2005, the Franklin County Grand Jury indicted appellant on one count of violating a protection order as a third-degree felony, in violation of R.C. 2919.27, by alleging that, from December 30, 2004 to January 7, 2005, appellant recklessly violated terms of a protection order issued against appellant while committing the felony of menacing by stalking with trespass. The grand jury also indicted appellant on two counts of menacing by stalking, in violation of R.C.2903.211. Pursuant to R.C. 2903.211(B), the grand jury enhanced the counts from first-degree misdemeanors to fourth-degree felonies by alleging that appellant committed menacing by stalking with trespass and menacing by stalking an individual with a protection order. Specifically, in the menacing by stalking with trespass charge, the grand jury alleged that, from May 27, 2004 to October 5, 2004, appellant, "by engaging in a pattern of conduct, did knowingly cause [Kathleen Grandey] to believe that [appellant] would cause physical harm * * * or * * * mental distress to [Grandey], and in committing the offense, [appellant] trespassed on the land or premises where [Grandey] lived, and/or was employed[.]" In the menacing by stalking an individual with a protection order charge, the grand jury alleged, in pertinent part, that, from December 20, 2004 to January 12, 2005, appellant, "by engaging in a pattern of conduct, did knowingly cause [Kathleen Grandey] to believe that [appellant] would cause physical harm * * * or * * * mental distress to [Grandey], and * * * at the time of the commission of the offense, [appellant] was the subject of a protection order issued under sections 2903.213 or 2903.214 of the Ohio Revised Code[.]" *Page 3 
 {¶ 3} Appellant pleaded not guilty to the above charges, and a jury trial ensued. At trial, Kathleen Grandey ("Grandey") testified to the following on behalf of plaintiff-appellee, the State of Ohio. Grandey is a hairstylist, and appellant had been Grandey's client for approximately one and a half to two years. Around Christmas 2003, while a client of Grandey's, appellant sent to Grandey's house gifts for Grandey and Grandey's nieces and nephew. Appellant sent the gifts after the mother of Grandey's nieces and nephew was in a serious automobile accident. The accident was "common knowledge" at the hair salon where Grandey worked. (Tr. at 30.) Although Grandey had clients who "sent cards or did nice things[,]" Grandey thought it "odd" that appellant sent gifts to her house. (Tr. at 30.) Nonetheless, Grandey sent appellant a thank-you note for the gifts.
 {¶ 4} Around late February or early March 2004, appellant's relationship with Grandey "started getting odd[.]" (Tr. at 31.) Appellant "sent some cards in the mail, and [Grandey] just dismissed them." (Tr. at 32.) In addition, appellant once left Grandey a telephone message at Grandey's home asking Grandey to call her. Grandey returned the call, "and it was a strange conversation. And [Grandey] just tried to get off [the phone] as soon as [she] could." (Tr. at 32.)
 {¶ 5} In March 2004, on a night before Grandey left for Las Vegas with her boyfriend, Grandey found in her mailbox the following gifts: cookies, a card, and a book on Las Vegas. Grandey knew that the gifts were from appellant because appellant signed the card. Grandey did not respond to appellant about the gifts.
 {¶ 6} Around May 27 or 28, 2004, Grandey found on the front step of her home cookies and a card that asked Grandey to be home at a certain time. Grandey made *Page 4 
sure that a male friend was with her during the time denoted on the card, and, at that time, the phone rang, and Grandey's friend answered the phone. Grandey's friend said hello a few times and hung up. Grandey's caller identification service identified the caller's phone number. Grandey called the number back, and Grandey received appellant's voicemail greeting. Grandey left a message telling appellant that "she needed to stop, that these games she was playing were going to end." (Tr. at 33.)
 {¶ 7} The next week, Grandey received a card in the mail that was blank on the outside. On the inside was a typed note that said appellant was sorry for upsetting Grandey. Appellant asked Grandey to call her, but Grandey did not call appellant. Grandey then spoke with her employer about appellant, and, in June 2004, Grandey's employer sent appellant a letter stating that she was no longer welcome at the hair salon.
 {¶ 8} Grandey also spoke with Police Officer Graves about appellant's conduct. Subsequently, in August 2004, Grandey "came home from work and checked [her] mail, and there was a letter — there was something sent to [her]. It was a piece of paper that had a lot of [Grandey's] personal information on it. And there was a statement about making a false complaint to Officer Graves so [Grandey] knew who it was from." (Tr. at 36.) As a result, Grandey filed a police report.
 {¶ 9} In mid-October 2004, a court awarded Grandey a civil protection order against appellant. Appellant was present when the court issued the protection order, which appellant signed. Appellee introduced into evidence a copy of the protection order. The protection order was issued, pursuant to R.C. 2903.214, and filed with the clerk of courts on October 15, 2004. The protection order expires on October 14, 2008, *Page 5 
and prohibits appellant from contacting Grandey or entering Grandey's residence or "grounds" at her residence. (State's Exhibit 1.)
 {¶ 10} On December 30, 2004, Grandey found in her mailbox a roll of toilet paper with the handwritten words "`I love you.'" (Tr. at 40.) Approximately January 6 or 7, 2005, Grandey received a letter asking her to be home at a certain time. Grandey made sure that her brother was with her during the stated time. At that time, Grandey's brother stayed for two and a half hours, but nothing happened. Ultimately, as Grandey's brother was leaving, and while Grandey checked for her mail, Grandey saw appellant driving by in her vehicle.
 {¶ 11} On approximately January 12, 2005, Grandey received another letter from appellant. Grandey testified that, in the letter, appellant stated "something to the fact that she knew what we were doing" and "to meet her somewhere else, I believe." (Tr. at 43.) Grandey then testified that she contacted the police, and the police filed a warrant for appellant's arrest.
 {¶ 12} Thereafter, Grandey testified:
 Q Now, let's go back to the beginning, back between May 27 and October 5, 2004. How did you feel when [appellant] was doing these things to you?
 A It was eerie. I got security on my house. * * * I didn't want to be alone. I always have people with me if I could. * * * I was fearful.
 Q. Why were you fearful?
 A It was just odd behavior. I'd never been exposed to that kind of behavior before. So I'm a person who minds my own business. When people butt into mine, it's overbearing.
 Q And when did you get the security system? *Page 6 
 A June of 2004.
 * * *
 Q How did you change the way you lived your life?
 A Constantly looking over my shoulder, constantly looking in the rear-view mirror, not trusting people that you meet.
 * * *
 Q Now, let's talk about the period from December 20, 2004, to January 12, 2005. This stuff was still going on. How did you feel at this point?
 A I didn't sleep, just scared to death not knowing what's going to happen next.
(Tr. at 43-44.)
 {¶ 13} Likewise, Grandey testified that "[t]here was a brief time between the end of September [2004] and Christmas where [her] parents moved in with [her] because [she] was scared to be alone." (Tr. at 44.) Grandey further testified that, after January 12, 2005, she "decided to move in with [her] brother and his family." (Tr. at 44.)
 {¶ 14} Next, Grandey testified as follows:
 Q Had [appellant] ever threatened you with physical violence?
 A There was a time * * * I came home from work, and when I started to open my door to get my mail, and I saw somebody coming from behind my car, and I shut the door and noticed it was [appellant]. And I remember screaming, "Get off my car, get away from me, leave me alone." * * * I tried to get out of there as fast as I could, and I drove to a gas station and called the police.
 Q What time period was that?
 A That was September 23, 2004. *Page 7 *Page 8 
 Q * * * Exactly where was the car and where was she?
 A My car [was] at the beginning [of] the driveway. She started on the passenger door. I kept trying to move my car. At that point she was at the front of my car, to the side of my car, until I could get away.
 Q So it was in your driveway?
 A Yes.
(Tr. at 44-45.)
 {¶ 15} On cross-examination, Grandey verified that, when she sent the thank-you note to appellant for the gifts that appellant sent to Grandey and her nieces and nephew, she wrote on the note: "`Thanks for listening and being a friend. It means the world to me.'" (Tr. at 53.) Grandey also testified on cross-examination that, during an unspecified time before the protection order, appellant had sent Grandey cookies, flowers, and a box with a pumpkin, flowers, a sweater, and a basket. Further, the following testimony took place during Grandey's cross-examination:
 Q You indicated that your parents moved in with you around December of 2003; correct?
 A No. September of 2004.
 Q September 2004. And that was for your protection and stuff?
 A They had sold their house and were going to live with my sister but decided to live with me.
 * * *
 Q Okay. So it wasn't they didn't move in with you just because you wanted their protection, correct?
 A Yes, they did. *Page 9 
 Q But they also happened to be in between houses?
 A Well, yes. (Tr. at 61-62.)
 {¶ 16} Lastly, Grandey testified on cross-examination that, after she obtained the protection order in October 2004, she never saw appellant on her property. However, Grandey reiterated that she saw appellant drive by her home, and she received items from appellant in her mailbox.
 {¶ 17} Columbus Police Officer Donald Wooten testified on appellee's behalf that, on September 23, 2004, he was called to a gas station to escort [Grandey] back to her residence. Columbus Police Detective David Phillips testified on appellee's behalf that he interviewed appellant about the above-noted incidents after she was arrested. Appellant agreed to talk with the detective, and appellant admitted to "two occasions placing letters in [Grandey's] mailbox and on another occasion putting toilet paper in her mailbox." (Tr. at 23.)
 {¶ 18} After appellee rested its case-in-chief, appellee indicated that it was not going to pursue the "mental distress" element of the menacing by stalking charges. (Tr. at 77.) Thereafter, appellant did not testify, and the jury ultimately found appellant guilty of menacing by stalking with trespass and menacing by stalking an individual with a protection order. The jury was unable to agree on a verdict on the charge of violating a protection order by menacing by stalking with trespass; however, the jury found appellant guilty of the first-degree misdemeanor lesser-included offense of violating a protection order while committing the offense of menacing by stalking without trespass. The trial court then sentenced appellant accordingly. *Page 10 
 {¶ 19} Appellant appeals, raising two assignments of error:
 [I.] WHETHER THE TRIAL COURT ERRED WHEN IT ENTERED JUDGMENT AGAINST THE APPELLANT WHEN THE EVIDENCE WAS INSUFFICIENT TO SUSTAIN A CONVICTION.
 [II.] WHETHER THE TRIAL COURT ERRED WHEN IT ENTERED JUDGMENT AGAINST THE APPELLANT WHEN THE CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 {¶ 20} In her first assignment of error, appellant contends that insufficient evidence supported her convictions for menacing by stalking with trespass and menacing by stalking an individual with a protection order. We disagree.
 {¶ 21} Sufficiency of the evidence is a legal standard that tests whether the evidence introduced at trial is legally sufficient to support a verdict. State v. Thompkins (1997), 78 Ohio St.3d 380, 386. We examine the evidence in the light most favorable to the state and conclude whether any rational trier of fact could have found that the state proved beyond a reasonable doubt the essential elements of the crime. State v. Hancock, 108 Ohio St.3d 57, 2006-Ohio-160, at ¶ 34, following Jackson v. Virginia (1979), 443 U.S. 307, 319; State v.Yarbrough, 95 Ohio St.3d 227, 2002-Ohio-2126, at ¶ 78. We will not disturb the verdict unless we determine that reasonable minds could not arrive at the conclusion reached by the trier of fact. State v.Jenks (1991), 61 Ohio St.3d 259, 273. In determining whether a conviction is based on sufficient evidence, we do not assess whether the evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction. See Jenks, paragraph two of the syllabus; Yarbrough at ¶ 79 (noting that courts do not evaluate witness credibility *Page 11 
when reviewing a sufficiency of the evidence claim); State v.Lockhart (Aug. 7, 2001), Franklin App. No. 00AP-1138.
 {¶ 22} Here, appellant was convicted of menacing by stalking with the felony enhancements of menacing by stalking with trespass and menacing by stalking an individual with a protection order. R.C. 2903.211 defines the general menacing by stalking offense, and states:
 (A)(1) No person by engaging in a pattern of conduct shall knowingly cause another person to believe that the offender will cause physical harm to the other person or cause mental distress to the other person.
 {¶ 23} In challenging her menacing by stalking convictions on appeal, appellant does not argue that the evidence failed to establish that she contacted Grandey in the manner that appellee alleged. Likewise, appellant does not argue that the evidence failed to support the felony enhancements of menacing by stalking with trespass and menacing by stalking an individual with a protection order. As an example, appellant does not argue that appellee failed to establish beyond a reasonable doubt that appellant's contacts with Grandey between May 27, 2004 to October 5, 2004, did not constitute trespass. Rather, appellant first argues that the record did not establish beyond a reasonable doubt that appellant engaged in the requisite pattern of conduct needed for the menacing by stalking with trespass conviction.
 {¶ 24} A "pattern of conduct" "means two or more actions or incidents closely related in time, whether or not there has been a prior conviction based on any of those actions or incidents." R.C.2903.211(D)(1). "R.C. 2903.211 does not attempt to define or give further meaning to the phrase `closely related in time.'" State v.Bone, Franklin *Page 12 
App. No. 05AP-565, 2006-Ohio-3809, at ¶ 24. "Consequently, `whether the incidents in question were "closely related in time" should be resolved by the trier of fact "considering the evidence in the context of all the circumstances in the case."'" Id., quoting State v. Dario (1995),106 Ohio App.3d 232, 238. Moreover, a "`pattern of conduct establishes how present behavior which is apparently innocent can be deemed threatening based on prior encounters between the parties.'" Bone at ¶ 25, quotingState v. Shue, Cuyahoga App. No. 84007, 2004-Ohio-5021, at ¶ 16.
 {¶ 25} As noted above, the menacing by stalking with trespass charge alleged conduct from May 27, 2004 to October 5, 2004. The record established that, in late May 2004, Grandey told appellant that "she needed to stop, that these games she was playing were going to end." (Tr. at 33.) Yet, appellant ignored Grandey's request and left Grandey a note at her home a week later, and appellant again contacted Grandey in August and September 2004. In this regard, the jury could properly consider the "context of all the circumstances" of such contacts and conclude that the contacts were not isolated, remote communications, but that the contacts were continuous occurrences "closely related in time" during the period contemplated in the indictment for menacing by stalking with trespass. Thus, the above contacts allowed the jury to conclude beyond a reasonable doubt that appellant engaged in a pattern of conduct in regards to the menacing by stalking with trespass charge.
 {¶ 26} Next, concerning the menacing by stalking with trespass charge, appellant argues that Grandey did not even testify that she feared appellant would physically harm her. We note that Grandey testified that she was fearful during the stalking incidents because appellant was displaying "odd behavior" and because Grandey is *Page 13 
uncomfortable with "overbearing" behavior. (Tr. at 43.) Yet, although Grandey did not specifically testify that she feared appellant would physically harm her, she did describe as "eerie" appellant's conduct between May 27 and October 5, 2004, and Grandey's actions demonstrated that appellant's conduct caused her to fear for her physical safety. (Tr. at 43.) Specifically, Grandey installed a security system for her house in June 2004, and Grandey always had people with her if she could. In addition, Grandey was constantly looking over her shoulder and constantly looking in the rearview mirror of her car. Likewise, Grandey contacted police about appellant's conduct, and, in particular, during the September 2004 incident with appellant in Grandey's driveway, Grandey had a police officer escort her from a gas station to her home. Lastly, Grandey testified that "[t]here was a brief time between the end of September [2004] and Christmas where [her] parents moved in with [her] because [she] was scared to be alone." (Tr. at 44.)
 {¶ 27} Regardless, appellant argues that the record did not establish that appellant acted knowingly in causing Grandey to believe that appellant would cause her physical harm during the incidents between May 27 and October 5, 2004. "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22(B). "Sufficient evidence supports the `knowingly' element of menacing by stalking if the evidence allows the trier of fact to reasonably conclude that the defendant was aware that his conduct would probably cause the victim to believe that the defendant will cause physical harm * * * to the victim." Bone at ¶ 33. *Page 14 
 {¶ 28} Here, Grandey displayed to appellant her fear for her safety by having her male friend answer appellant's expectant phone call in late May 2004, and, afterwards, telling appellant that "she needed to stop, that these games she was playing were going to end." (Tr. at 33.) Yet, appellant exacerbated such fear by: (1) contacting Grandey repeatedly in spite of Grandey's requests that appellant not do so; (2) giving Grandey a note with Grandey's personal information and a statement about Grandey contacting Detective Graves; and (3) appearing unexpectedly on Grandey's driveway and trying to approach Grandey's vehicle while Grandey pled for appellant to leave. Thus, we conclude that the evidence properly allowed the jury to reasonably infer that appellant was aware that her conduct between May 27 and October 5, 2004, would "probably" cause Grandey to believe that appellant will cause Grandey physical harm.
 {¶ 29} Accordingly, based on the above, we conclude that sufficient evidence supported appellant's menacing by stalking with trespass conviction. Next, appellant challenges her conviction for menacing by stalking an individual with a protection order, which involved incidents that occurred between December 20, 2004 and January 12, 2005. As above, appellant argues that the record failed to establish that, during such a time, appellant knowingly caused Grandey to believe that appellant would probably cause Grandey physical harm. However, we first note that Grandey testified that she was "scared to death" and did not sleep due to appellant's conduct between December 20, 2004 and January 12, 2005. (Tr. at 44.) Furthermore, Grandey's actions demonstrated her fear for her physical safety. In particular, Grandey had her brother be with her at her home during a time period in January after appellant left Grandey a note *Page 15 
asking Grandey to be home at a certain time. Moreover, due to appellant's stalking, Grandey moved out of her home in January 2005.
 {¶ 30} Likewise, we conclude that the evidence properly allowed the jury to reasonably infer that appellant was aware that her conduct between December 20, 2004 to January 12, 2005, would "probably" cause Grandey to believe that appellant would cause her physical harm. In particular, Grandey displayed to appellant her fear for her safety when Grandey obtained the October 15, 2004 civil protection order. Yet, appellant exacerbated such fear by ignoring the protection order and contacting Grandey several times. Indeed, through one contact, appellant left Grandey an alarming note stating, from what Grandey recalled, "something to the fact that she knew what we were doing" and "to meet her somewhere else[.]" (Tr. at 43.) Further compounding Grandey's fear, Grandey saw appellant's vehicle near her house at a time that appellant had asked in a note that Grandey be home.
 {¶ 31} Accordingly, based on the above, we conclude that sufficient evidence supported appellant's conviction for menacing by stalking an individual with a protection order. Having also concluded that sufficient evidence supported appellant's menacing by stalking with trespass conviction, we overrule appellant's first assignment of error.
 {¶ 32} In her second assignment of error, appellant argues that her convictions for menacing by stalking with trespass and menacing by stalking an individual with a protection order were against the manifest weight of the evidence. We disagree.
 {¶ 33} In determining whether a verdict is against the manifest of the evidence, we sit as a "`thirteenth juror.'" Thompkins at 387. Thus, we review the entire record, weigh the evidence and all reasonable inferences, and consider the credibility of *Page 16 
witnesses. Id. Additionally, we determine "whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." Id., quoting State v. Martin
(1983), 20 Ohio App.3d 172, 175. We reverse a conviction on manifest weight grounds for only the most "`exceptional case in which the evidence weighs heavily against the conviction.'" Thompkins at 387, quoting Martin at 175. Moreover, "`it is inappropriate for a reviewing court to interfere with factual findings of the trier of fact * * * unless the reviewing court finds that a reasonable juror could not find the testimony of the witness to be credible.'" State v. Brown, Franklin App. No. 02AP-11, 2002-Ohio-5345, at ¶ 10, quoting State v. Long (Feb. 6, 1997), Franklin App. No. 96APA04-511.
 {¶ 34} In arguing that the above menacing by stalking convictions were against the manifest weight of the evidence, appellant argues that "[t]he evidence before the jury consisted of testimony that [a]ppellant, every few months, sent [Grandey] non-threatening notes and gifts * * *. No rational trier-of-fact could have extrapolated the testimony to reach the level of threatening behavior. * * * [T]he jury still would have to further infer that [a]ppellant intended her annoying but harmless attempts to contact [Grandey] to place [Grandey] in such fear."
 {¶ 35} While appellant attempts to describe her activities as "annoying" and "harmless," we nonetheless determined above that sufficient evidence established that appellant's contact with Grandey constituted menacing by stalking with trespass and menacing by stalking an individual with a protection order. Accordingly, it was within the province of the jury to draw the reasonable conclusions from the evidence and find *Page 17 
appellant guilty of menacing by stalking with trespass and menacing by stalking an individual with a protection order. See State v. Bell (Apr. 26, 1985), Lucas App. No. L-84-423. Therefore, we overrule appellant's second assignment of error.
 {¶ 36} In summary, we overrule appellant's first and second assignments of error. As such, we affirm the judgment of the Franklin County Court of Common Pleas.
Judgment affirmed.
PETREE and GREY, JJ., concur.
GREY, J., retired of the Fourth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution. *Page 1