[Cite as *State v. Simpson*, 2024-Ohio-2865.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## TRUMBULL COUNTY

| | |
|---|---|
| STATE OF OHIO,<br>CITY OF WARREN,<br><br>Plaintiff-Appellee,<br><br>- vs -<br><br>NATHANIEL C. SIMPSON, SR.,<br><br>Defendant-Appellant. | CASE NO. 2023-T-0093<br><br>Criminal Appeal from the<br>Warren Municipal Court<br><br>Trial Court No. 2023 CRB 000989 |

**O P I N I O N**

Decided: July 29, 2024
Judgment: Reversed and remanded

*Thomas J. Wilson*, Comstock, Springer & Wilson Co., LPA, 100 Federal Plaza East, Suite 926, Youngstown, OH 44503 (For Plaintiff-Appellee).

*Jason M. Jordan*, Jason M. Jordan Legal Services, LLC, 3580 Darrow Road, Stow, OH 44224 (For Defendant-Appellant).

MARY JANE TRAPP, J.

{¶1} Appellant, Nathaniel C. Simpson, Sr. ("Mr. Simpson"), appeals from the judgment of the Warren Municipal Court that sentenced him, after finding him guilty of menacing by stalking, to 180 days in jail, with 170 days suspended, and five years of probation, with a no contact order for the victim, L.D. During the hearing, the trial court found Mr. Simpson guilty of contempt and sentenced him to five days in jail, which the court included in his ten-day jail sentence.

{¶2} Mr. Simpson raises three assignments of error on appeal, contending (1) the trial court committed reversible error by proceeding with a bench trial after a jury demand was made; (2) the evidence was insufficient to support his conviction for menacing by stalking, and the trial court erroneously considered his unsworn statements in rendering the verdict; and (3) the trial court abused its discretion when it found him in contempt.

{¶3} After a careful review of the record and pertinent law, we find Mr. Simpson's first assignment of error to have merit. The trial court had no jurisdiction to proceed with a bench trial since Mr. Simpson filed a written demand for a jury trial. Once a defendant in a petty offense case requests a jury trial, the trial court may not conduct a bench trial unless the defendant makes a knowing, voluntary, and intelligent waiver of his right to a jury trial and that waiver is made part of the record pursuant to R.C. 2945.05. The jury waiver must be in writing, signed by the defendant in open court, and filed. Because violating Mr. Simpson's constitutional right to a jury trial is a prejudicial error, we reverse and remand this matter for a new trial.

{¶4} Mr. Simpson raises an evidentiary issue, i.e., whether the trial court erroneously considered his unsworn statement when rendering the verdict, and a sufficiency argument under his second assignment of error. We decline to determine the evidentiary issue since our disposition of his first assignment of error renders the issue moot; however, we must analyze Mr. Simpson's sufficiency argument inasmuch as entitlement to an acquittal would bar a retrial on double jeopardy grounds. A review of the State's evidence, which included 12 emails containing threats and/or statements of unrequited love, mail Mr. Simpson sent to himself at L.D.'s address, a letter from the city

2

law director to Mr. Simpson requesting that he cease contact with L.D., and L.D.'s testimony, particularly as to their prior tumultuous history and her feelings of fear/distress, was more than sufficient evidence from which a trier of fact could find Mr. Simpson guilty of menacing by stalking beyond a reasonable doubt.

{¶5} Lastly, Mr. Simpson's third assignment of error is moot (albeit not because of our disposition of his first assignment of error since contempt is a collateral issue) because he already served his sentence for contempt.

{¶6} The judgment of the Warren Municipal Court is reversed, and this matter is remanded for a new trial in accordance with this opinion.

## Substantive and Procedural History

{¶7} On June 1, 2023, a complaint was filed in the Warren Municipal Court charging Mr. Simpson with one count of menacing by stalking, a first-degree misdemeanor, in violation of Warren Cod.Ord. 537.051. Several days later, the trial court issued a temporary order of protection ("TPO") to protect L.D.

{¶8} Shortly after his arraignment, Mr. Simpson's defense counsel filed a "Notice of Appearance/Not Guilty Plea/Waiver of Time/Demand for Jury," demanding, in relevant part, a jury trial.

{¶9} Several weeks later, Mr. Simpson's counsel filed a motion to withdraw as counsel, which the court granted.

## Bench Trial

{¶10} The case proceeded to a one-day bench trial. At the start of the trial, the trial court informed Mr. Simpson of the potential penalties for menacing by stalking and violating a protection order (charged in a separate case), both first-degree misdemeanors

3

carrying a potential penalty of up to six months in jail. Upon the court's inquiry, Mr. Simpson confirmed he wanted to proceed pro se.

{¶11} The State offered into evidence multiple emails from Mr. Simpson to L.D., a letter from the city law director to Mr. Simpson, and two pieces of mail Mr. Simpson sent to L.D.'s house that were addressed to himself. The State also presented L.D. as a witness.

{¶12} L.D. testified that she and Mr. Simpson dated for approximately three years and that their relationship ended in 2021. At that time, she told Mr. Simpson to stop contacting her; however, he continued to send her emails. Eventually, in the spring of 2023, L.D. reported Mr. Simpson to the city law director.

{¶13} Mr. Simpson's emails, which were sent between October 2022 and May 2023, contained a variety of threatening, cajoling, and affectionate statements as well as bible quotes. For instance, he wrote: "This is my LAST attempt to pull you out of the ocean"; "STAY COMMITTED TO BEING COMMITTED. AND KEEP YOUR MOUTH CLOSED…STAYING FOCUSED IS THE KEY! . . . <3 ALWAYS"; "I now take him as a clear threat and won't hesitate. This includes throwing bricks through windows like a[n] unstable-minded human being"; and "I have put EVERYTHING TOGETHER and waiting on you simply to say (ENOUGH IS ENOUGH.) Put the bad and past behind and bring your butt HOME OUT OF THE STORM! . . . Still in Love with you."

{¶14} L.D. testified that the emails left her "feeling like upset. I'm feeling threatened. I'm feeling like I don't know what this man is doing. I don't – I wish he would stop."

4

Case No. 2023-T-0093

{¶15} On April 5, 2023, the city law director sent Mr. Simpson a letter, advising him that "a complaint has been made against you with regard to a matter involving [L.D.]. We would like to avoid the need to file charges in the matter." The letter further advised Mr. Simpson and/or his legal counsel to contact him to further discuss the matter.

{¶16} Despite the letter, Mr. Simpson sent L.D. several emails with attachments on May 25, 2023. The attachments were photographs of L.D.'s backyard during a renovation and of L.D.'s family that she had "entrusted" in his care.

{¶17} Mr. Simpson was subsequently charged with aggravated menacing. Several days later, the trial court issued the TPO prohibiting Mr. Simpson from contacting L.D.

{¶18} In September 2023, while awaiting trial in this case, Mr. Simpson sent two pieces of mail to L.D.'s home that were addressed to himself. One was a blank "thank you" card, and the second was an advertisement for a cable and internet company.

{¶19} Mr. Simpson began his cross-examination of L.D. by asking her who ended their relationship. The court questioned the relevance of Mr. Simpson's questioning. Mr. Simpson started to explain. The court stopped him, reminding him that he was not testifying but was cross-examining a witness.

{¶20} Mr. Simpson offered two transcripts of hearings from different cases that involved Mr. Simpson and L.D. Mr. Simpson contended the transcripts revealed that he terminated the relationship with L.D. and that she did not tell him to stop contacting her. The court instructed him to lay a foundation for the transcripts.

{¶21} The first transcript was from a hearing in the Trumbull County Court of Common Pleas, Domestic Relations Division, in which L.D. was the petitioner and Mr.

5

Simpson was the respondent. Although the caption of transcript identified L.D. as the petitioner, Mr. Simpson claimed it concerned a civil protection order ("CPO") he filed against L.D. and her son.

{¶22} The court noted that, sitting as the trier of fact, it was allowed to speculate from the fact of the prior civil protection hearing that Mr. Simpson should have known L.D. did not want him to contact her.

{¶23} Mr. Simpson, however, continued to explain that this was relevant because the trial court in the prior case had ruled in his favor. The trial court stopped Mr. Simpson's explanation, finding it was a form of testimony and Mr. Simpson might have incriminated himself. Ultimately, the trial court found that it was "going to take [the transcript] as a record at that point, when that civil protection order was filed, you had knowledge at that point, that she did not want you to communicate with her. So I don't know where we are going now."

{¶24} The second transcript was from a foreclosure case in the Trumbull County Court of Common Pleas against L.D. in which Mr. Simpson intervened, alleging L.D. did not pay him for a contracting job. The State objected.

{¶25} The court sustained the State's objection, noting the transcript "had nothing to do with menacing by stalking or violation of protection order," and warned Mr. Simpson to stop offering irrelevant evidence. After Mr. Simpson began explaining, the court warned him it would find him in contempt.

{¶26} Mr. Simpson offered six police reports into evidence that he claimed he filed against L.D. in 2021, 2022, and 2023. The State objected, noting that one of the reports

6

was filed by L.D. and that the others did not name L.D. and/or concerned other matters. The court sustained the State's objection.

{¶27} Mr. Simpson again questioned L.D. about their relationship, prompting the court to remind him that it did not want to hear about their relationship prior to 2021 and that he had elicited "very little testimony" regarding the two criminal charges at issue.

{¶28} Mr. Simpson then questioned L.D. whether he "violated in a menacing, or a stalking with you ever?" The State objected. In an exchange with the court, Mr. Simpson continued to contend that the parties' prior hearings indicated this was a "2-way street," while the court reminded him it did not matter whether he won or lost in the prior cases.

{¶29} Mr. Simpson tried to question the prosecutor about the letters L.D. received in the mail from him, but the court stopped him, explaining the prosecutor was not a witness.

{¶30} Mr. Simpson began to question L.D. about the letters he sent to her house, claiming they were evidence that he did not want mail sent to her house and that he stated so in the emails she submitted as evidence. The court stopped Mr. Simpson, explaining she was not the proper witness:

{¶31} "[The Court]: Objection. I'm going to do it. She can't answer that question.

{¶32} "[Mr. Simpson]: Why can't she?

{¶33} "[The Court]: Because she doesn't know.

{¶34} "[Mr. Simpson]: I told her, that it's in the e-mail. It's even in the e-mail, your Honor.

{¶35} "[The Court]: The postmaster has to answer that question, and he's not-he or she is not here.

7

Case No. 2023-T-0093

{¶36} "[Mr. Simpson]: The courts informed us-

{¶37} "[The Court]: I'm not-ask her questions, please. Are those your text messages [emails] or not? Yes, or no?

{¶38} "[Mr. Simpson]: Yes, they are.

{¶39} "[The Court]: And the timing on those text messages [emails] are accurate. Am I correct?

{¶40} "[Mr. Simpson]: Yes they are.

{¶41} "[The Court]: And they're after the 21st hearing you had in domestic court. Is that correct?

{¶42} "[Mr. Simpson]: Yes, they are.

{¶43} "[The Court]: There you go. You just incriminated yourself.

{¶44} "[Mr. Simpson]: No, no, no. What they are, is information regarding what we were supposed to do, just like this court–

{¶45} "[The Court]: Alright, skip it, skip it, skip it. You're missing the point of all this."

{¶46} The court stopped Mr. Simpson's cross-examination, noting it had been over 45 minutes and Mr. Simpson had not asked any questions of the witness. After the State's exhibits were admitted, the court asked Mr. Simpson if he wished to testify, warning him he was "this far from contempt."

{¶47} Mr. Simpson declined; however, he continued speaking: "If you allow me. I'm, I'm turning. I don't want the relationship. I never-when I was done, I was done. If you allow me to bring in one (1) piece of evidence, I'll show you credibility to all that." The court stopped him and asked him to raise his right hand to testify. Mr. Simpson asked,

8

"Do I have to be sworn in?  Do I have to testify?"  The court told him he did not have to.  Mr. Simpson, however, continued.  The court told Mr. Simpson, "You're trying to testify."  Mr. Simpson replied:  "You-you know what's true."  The court found him in contempt and ordered him to serve five days in jail.

{¶48}  Mr. Simpson continued, "I don't want to testify anymore, your Honor.  Can this court allow me to get an attorney then?  Since you're saying that–

{¶49}  "[The Court]:  I've asked you four (4) times to get an attorney, no.  We are going forward now.

{¶50}  "[Mr. Simpson]:  I don't want to, your Honor, I don't, with all due respect.  Because you've had already ruled in my favor in a case prior to this, and I'm here."

{¶51}  The court ended the hearing, finding:

{¶52}  "To the charge[,] by the admission of the defendant's own statements, after being asked by the court, the court finds that the defendant is guilty of menacing by stalking.  He is ordered to pay a fine of two (2) hundred and fifty (50) dollars.  He is ordered to be sentenced to jail for one (1) hundred and eighty (80) days, I will suspend one (1) hundred and seventy (70) days.  The ten (10) days will include the five (5) days finding in contempt.  With respect to the violation of a protection order, the court finds the defendant not guilty.  We are done, you're going to jail today.  There will be a no contact order, you will be placed on five (5) years' probation, with a no contact order with the victim."

{¶53}  The trial court released Mr. Simpson from jail after he served three days of his ten-day sentence.

{¶54}  Mr. Simpson raises three assignments of error for our review:

9

**{¶55}** "[1.] The trial court committed reversible and plain error when it proceeded with a bench trial after a jury demand was made.

**{¶56}** "[2.] The trial court committed reversible and plain error when it entered a guilty verdict on the charge of Menacing by Stalking.

**{¶57}** "[3.] The trial court abused its discretion when it found Defendant-Appellant in Contempt."

### Jury Demand

**{¶58}** In his first assignment of error, Mr. Simpson contends the trial court committed reversible and plain error when it proceeded with a bench trial after he filed a written jury demand.

**{¶59}** "The Sixth Amendment to the United States Constitution, made applicable to the states through the Fourteenth Amendment, guarantees an accused the right to trial by jury." *State v. Lomax*, 2007-Ohio-4277, ¶ 6. Further, "[t]he accused's right to be tried by a jury is secured in this state by Article I, Section 10 of the Ohio Constitution . . . ." *State v. Tate*, 59 Ohio St.2d 50, 52 (1979). Nevertheless, "'[t]he guarantee of a jury trial in criminal cases contained in the state and federal Constitutions is not an absolute and unrestricted right in Ohio with respect to misdemeanors, and a statute, ordinance or authorized rule of court may validly condition the right to a jury trial in such a case on a written demand therefor . . . .'" *Id.*, quoting *Mentor v. Giordano*, 9 Ohio St.2d 140 (1967), paragraph one of the syllabus.

**{¶60}** Crim.R. 23(A) provides that "[i]n petty offense cases, where there is a right of jury trial, the defendant shall be tried by the court unless he demands a jury trial. Such a demand must be in writing and filed with the clerk of court not less than ten days prior

10

to the date set for trial . . . . Failure to demand a jury trial as provided in this subdivision is a complete waiver of the right thereto."

{¶61} Mr. Simpson was charged with two first-degree misdemeanors that subjected him to potential prison terms of six months for each charge. *See* Crim.R. 2(C) and (D) (defining "petty offense" as an offense that includes potential confinement for less than six months). Accordingly, while represented by counsel, Mr. Simpson filed a written jury demand to preserve his rights.

{¶62} As we explained in *State v. White*, 2022-Ohio-1635 (11th Dist.):

{¶63} "Once a defendant in a petty-offense case requests a jury trial, the trial court may not conduct a bench trial '"unless the defendant makes a knowing, voluntary, and intelligent waiver of his right to a jury trial, and that waiver is made part of the record pursuant to R.C. 2945.05."' *State v. Dengg*, 2009-Ohio-4101, ¶ 25 (11th Dist.), quoting *State v. Pflanz*, 135 Ohio App.3d 338, 339 (1st Dist.1999). Furthermore, even though counsel did not object to the matter proceeding to a bench trial, the failure to object is of no moment. 'Silent acquiescence to a bench trial is not sufficient to constitute a waiver of a defendant's right to a trial by jury.' *State v. Taylor*, 11th Dist. Portage No. 98-P-0022, 2001 WL 501984, *1 (May 11, 2001). As the Supreme Court of Ohio observed in *Tate* . . . . :

{¶64} "'While the circumstances of this cause could lead one to surmise that appellant was aware of the situation and possibly took advantage of it, we cannot accept the proposition that there was a waiver of this right by silence. To do so would not only conflict with years of constitutional precedent, it could well require this court to review the circumstances of all such similar cases to determine whether the conduct and education

11

of the accused and the adequacy of his counsel would support such an implicit waiver in each instance. As was stated in *Simmons v. State* (1906), 75 Ohio St. 346, at paragraph two of the syllabus, "[s]uch waiver must clearly and affirmatively appear upon the record, and it cannot be assumed or implied by a reviewing court from the silence of the accused . . . ." Furthermore, "[e]very reasonable presumption should be made against the waiver, especially when it relates to a right or privilege deemed so valuable as to be secured by the Constitution.'" *Id.*, at 352.

{¶65} "To possess authority to try [Mr. Simpson] to the bench *after* he made the requisite jury demand, the record must reflect he signed a written waiver of his right to a jury trial in open court and the waiver was filed. R.C. 2945.05; *see also Tate*, [59 Ohio St.2d,] 53-54. The provisions of R.C. 2945.05 are mandatory. . . . . No such waiver appears in the record. Because the dictates of R.C. 2945.05 were not followed, the trial court lacked jurisdiction to conduct a bench trial. *State v. Pless*, 74 Ohio St.3d 333 (1996), paragraph one of the syllabus. ('Absent strict compliance with the requirements of R.C. 2945.05, a trial court lacks jurisdiction to try the defendant without a jury.')" *White*, 2022-Ohio-1635, ¶ 7-9 (11th Dist.).

{¶66} We therefore determine Mr. Simpson was denied his constitutional right to trial by jury. This is a prejudicial error requiring reversal of appellant's conviction and remanding the matter for a new trial. *See id.* at ¶ 9.

{¶67} Mr. Simpson's first assignment of error has merit.

## Sufficiency of the Evidence

{¶68} In his second assignment of error, Mr. Simpson contends the evidence was insufficient to sustain his conviction for menacing by stalking because there was no

12

evidence he knew his actions would cause L.D. to fear physical harm and/or mental distress and because the trial court erroneously considered Mr. Simpson's unsworn statements when rendering its verdict.

{¶69} At the outset, we note that finding Mr. Simpson's first assignment of error to have merit does not render his remaining assignments of error moot. Should we find merit in his sufficiency argument, Mr. Simpson would be entitled to acquittal, and the State would be barred from retrying the case due to double jeopardy protections. *See Dengg*, 2009-Ohio-4101, at ¶ 32 (11th Dist.). Similarly, contempt is a collateral issue. *Gatlin v. Harmon*, 2021-Ohio-1852, ¶ 17 (9th Dist.).

{¶70} Crim.R. 29(A) provides, "[t]he court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses." "Thus, when an appellant makes a Crim.R. 29 motion, he or she is challenging the sufficiency of the evidence introduced by the state." *State v. Patrick*, 2004-Ohio-6688, ¶ 18 (11th Dist.).

{¶71} "'"[S]ufficiency" is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law.'" *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997), quoting *Black's Law Dictionary* (6th Ed. 1990). "In essence, sufficiency is a test of adequacy." *Id.* "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Jenks*, 61

13

Ohio St.3d 259 (1991), paragraph two of the syllabus. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.*

{¶72} Mr. Simpson was convicted of menacing by stalking, in violation of Warren Cod.Ord. 537.051(a)(1), which provides:

{¶73} "No person by engaging in a pattern of conduct shall knowingly cause another person to believe that the offender will cause physical harm to the other person or a family or household member of the other person or cause mental distress to the other person or a family or household member of the other person. In addition to any other basis for the other person's belief that the offender will cause physical harm to the other person or the other person's family or household member or mental distress to the other person or the other person's family or household member, the other person's belief or mental distress may be based on words or conduct of the offender that are directed at or identify a corporation, association or other organization that employs the other person or to which the other person belongs."

{¶74} The offense includes "post[ing] a message or us[ing] any intentionally written or verbal graphic gesture . . . through the use of any form of written communication or any electronic method of remotely transferring information, including, but not limited to, any computer, computer network, computer program, computer system or telecommunication device . . . ." Warren Cod.Ord. 537.051(a)(2). *See also* R.C. 2903.211(A)(1) and (2).

14

Case No. 2023-T-0093

{¶75} Pursuant to R.C. 2901.22(B), "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist. When knowledge of the existence of a particular fact is an element of an offense, such knowledge is established if a person subjectively believes that there is a high probability of its existence and fails to make inquiry or acts with a conscious purpose to avoid learning the fact."

{¶76} "Sufficient evidence supports the 'knowingly' element of menacing by stalking if the evidence allows the trier of fact to reasonably conclude that the defendant was aware that his conduct would probably cause the victim to believe that the defendant will cause physical harm or mental distress to the victim." *State v. Bone*, 2006-Ohio-3809, ¶ 33 (10th Dist.).

{¶77} The State introduced into evidence 12 emails Mr. Simpson sent to L.D. between October 2022 to May 2023 containing threats and/or expressing unrequited affection, the April letter the city law director sent to Mr. Simpson to stop contacting L.D., two pieces of mail Mr. Simpson sent to L.D.'s address in September 2023 after the complaint of menacing was filed against him, and L.D.'s testimony, including her testimony that she was scared and did not know what he was going to do. Further, Mr. Simpson elicited testimony about their tumultuous relationship, including a CPO hearing. The trier of fact had more than enough evidence that Mr. Simpson knew "his behavior would cause a certain result" by the very nature of his emails and his history with L.D.

{¶78} Thus, the State introduced sufficient evidence from which a trier of fact could find, beyond a reasonable doubt, that Mr. Simpson knowingly engaged in a pattern

15

of conduct that caused L.D. to believe Mr. Simpson would cause physical harm or mental distress to her or to a family or household member.

{¶79} Courts have upheld similar types and patterns of behavior as sufficient evidence of menacing by stalking. For instance, in *L.M.W. v. B.A.*, 2022-Ohio-2416 (8th Dist.), in a dispute between neighbors, the Eighth District found the evidence was sufficient to establish that the appellant committed acts against the appellee that constituted menacing by stalking, where the appellant sent numerous letters and emails to the appellee's personal and work email addresses and the appellee had a video depicting the appellant's behavior when the appellee was erecting a fence between their two properties. *Id.* at ¶ 20. Similarly, in *B.M. v. G.H.*, 2020-Ohio-3629 (7th Dist.), the Seventh District found the appellee's testimony sufficiently established a pattern of menacing conduct, where she testified to four separate incidents and numerous emails, text messages, and Facebook messages sent by the appellant. *Id.* at ¶ 29. *See also Dayton v. Davis*, 136 Ohio App.3d 26, 32-33 (2d Dist. 1999) (appellant's frequent communications to victim expressing desire to see her in pain, vituperative tone in emails to victim, and sending her a grotesque website allowed an easy conclusion that defendant knowingly caused victim to believe he would cause her mental distress and/or physical harm); *State v. Shue*, 2004-Ohio-5021, ¶ 19 (8th Dist.) (ample evidence that appellant physically and verbally threatened the victim and caused her mental distress by repeatedly calling her).

{¶80} Having established the State's evidence was sufficient to sustain Mr. Simpson's conviction for menacing by stalking, we turn to whether the trial court erroneously considered Mr. Simpon's unsworn statements in reaching a verdict. This

16

Case No. 2023-T-0093

portion of Mr. Simpson's assignment of error, however, is not a challenge to the sufficiency of the evidence and raises an evidentiary issue. We decline to determine this issue since our disposition of Mr. Simpson's first assignment of error renders this issue moot.

{¶81} Mr. Simpson's second assignment of error is without merit.

## Contempt

{¶82} In his third assignment of error, Mr. Simpson contends the trial court abused its discretion when it found him in contempt because he did not have the opportunity to defend himself and because the record did not support the court's finding.

{¶83} Mr. Simpson's assignment of error is moot because he already served his sentence for contempt. "When a contemnor appeals a finding of criminal contempt, courts typically apply the general rule governing mootness of criminal appeals." *In re Chambers*, 2019-Ohio-3596, ¶ 11 (1st Dist.). In criminal cases, "[w]here a defendant, convicted of a criminal offense, has voluntarily paid the fine or completed the sentence for that offense, an appeal is moot when no evidence is offered from which an inference can be drawn that the defendant will suffer some collateral disability or loss of civil rights from such judgment or conviction." *State v. Wilson*, 41 Ohio St.2d 236 (1975), syllabus.

{¶84} The Supreme Court of Ohio has held that the completion of a sentence is involuntary and does not render an appeal moot "if the circumstances surrounding it demonstrate that the appellant neither acquiesced in the judgment nor abandoned the right to appellate review, that the appellant has a substantial stake in the judgment of conviction, and that there is subject matter for the appellate court to decide." *Cleveland Hts. v. Lewis*, 2011-Ohio-2673, paragraph one of the syllabus. The burden is on the

17

appellant to show that he will suffer some collateral disability or loss of civil rights from such judgment or conviction. *See State v. Berndt*, 29 Ohio St.3d 3, 4 (1987).

**{¶85}** The Supreme Court has explained that "a misdemeanant . . . objectively demonstrates that the sentence is not being served voluntarily" when he "contests charges at trial and, after being convicted, seeks a stay of execution of sentence from the trial court for the purpose of preventing an intended appeal from being declared moot . . . because no intent is shown to acquiesce in the judgment or to intentionally abandon the right of appeal." *Lewis* at ¶ 23.

**{¶86}** Mr. Simpson did not request a stay of his sentence, and he has completed his sentence for contempt that was imposed by the trial court. Accordingly, Mr. Simpson has failed to demonstrate that he served his sentence involuntarily and/or that he will suffer some collateral disability or loss of civil rights. *See id.*

**{¶87}** Mr. Simpson's third assignment of error is moot.

**{¶88}** The judgment of the Warren Municipal Court is reversed, and this matter is remanded for a new trial in accordance with this opinion.


JOHN J. EKLUND, J.,

ROBERT J. PATTON, J.,

concur.

Case No. 2023-T-0093