[Cite as *Frenchko v. Frenchko-Nagy*, 2015-Ohio-4546.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# TRUMBULL COUNTY, OHIO

| | | |
|---|---|---|
| NATASHA K. FRENCHKO, | : | **O P I N I O N** |
| Petitioner-Appellee, | : | |
| - vs - | : | **CASE NO. 2015-T-0011** |
| MICHELE N. FRENCHKO-NAGY, | : | |
| Respondent-Appellant. | : | |

Civil Appeal from the Trumbull County Court of Common Pleas, Case No. 2012 CV 02234.

Judgment: Affirmed.

*Robert C. Kokor,* 394 State Route 7, S.E., P.O. Box 236, Brookfield, OH 44403 (For Petitioner-Appellee).

*Martin E. Yavorcik,* 1675 W. Western Reserve Road, 1 G, Poland, OH 44514 (For Respondent-Appellant).


DIANE V. GRENDELL, J.

{¶1} Respondent-appellant, Michele N. Frenchko-Nagy, appeals the judgment of the Trumbull County Court of Common Pleas, granting petitioner-appellee, Natasha K. Frenchko, a civil stalking protection order. The issues to be determined in this case are whether mental distress for the purposes of a civil protection order is proven when the victim seeks medical assistance, requests a police investigation of an alleged stalking incident, and sleeps on the floor near her child's bed in response to the

conduct; and whether a pattern of conduct is established based on a phone call of a sexual nature, two Facebook posts linking to the page of a known criminal, and a text message from a third party with a photograph of the respondent and the petitioner's boss. For the reasons that follow, we affirm the decision of the lower court.

{¶2} On October 1, 2012, Natasha filed a Petition for Civil Stalking Protection Order against her sister, Michele. In response, an Ex Parte Protection Order was issued on October 3.

{¶3} A hearing was held on this matter on April 10 and May 13, 2013.

{¶4} Natasha Frenchko testified regarding the incidents leading her to seek the protection order. In June of 2012, following an argument during which Michele became "very angry," Natasha requested that Michele no longer talk to her. This was based upon Natasha's knowledge of Michele's past physical aggression and concerns with her behavior.

{¶5} On August 13, 2012, Natasha received a call to her cell phone from a blocked number at around 2:30 a.m. The call was from a male and of a "sexual nature," with a message left stating her name and that the caller wanted "a piece of that hot booty." A recording of the message was submitted into evidence, in which the caller states that he found her phone number on a bathroom wall, and said "you got that booty that I want." Natasha, a Mahoning County prosecutor, feared that the call may have been work-related, given that she prosecutes sex crimes. She explained, however, that in 2008, a similar incident occurred, where a caller made a statement that he wanted "a piece of that hot ass." It was later discovered that the call was from Michele's ex-boyfriend and Michele confirmed to Natasha that she had "put [her boyfriend] up to"

2

calling her. Natasha reported the August 13 call to her supervisors at work and an investigation with the Sherriff's Department was initiated.

{¶6} On August 17, 2012, Michele posted a link on Natasha's Facebook page relating to a Jim Traficant book signing, which stated "I can get you VIP access with Frankie Susany," a person she did not personally know but was aware, from her job, had a criminal history. Natasha stated that she believed the hyperlink posted by Michele gave Susany "access to [her] Facebook page," which was private and could only be viewed by her friends on Facebook.

{¶7} On August 23, 2012, Michele wrote a comment on Natasha's Facebook page discussing craft supplies and a portion of the comment was a hyperlink, which, when clicked upon, linked to Susany's Facebook page. Natasha testified that these incidents caused her to "shut down" her Facebook page.

{¶8} In September, Natasha received a text message from a colleague, Dave Betras. The message included a photo of Michele and Natasha's boss, Mahoning County Prosecutor Paul Gains, which caused her concern.

{¶9} According to Natasha, following a pretrial related to this matter, Susany approached her and admitted to making the August 13 phone call. He stated that he had gotten the number from Michele's cell phone.

{¶10} Natasha testified that, following the phone call, she visited her doctor due to heart palpitations and shortness of breath. Her doctor informed her that it was stress-related. The call raised Natasha's anxiety levels and she could not sleep. She stated that she was sleeping on her daughter's floor outside of her crib due to the incidents. She was also afraid Michele would try to get her fired.

3

{¶11} Mahoning County Sheriff's Office Detective Patrick Mondora investigated the August 13 phone call. When he spoke with Natasha about the call she was very upset and concerned for her and her child's safety. Following his investigation and a subpoena, it was determined that the call came from Frank Susany's phone. Mondora testified that Susany had a criminal record, which included violence, information he provided to Natasha.

{¶12} Matthew Natale, Natasha's fiancé, testified that Natasha and Michele's relationship was not good over the past year and that Natasha did not want to have contact with her. When Natasha received the phone call, she was distraught and concerned for her safety.

{¶13} David Betras, who text messaged the picture of Natasha's boss and Michele together, explained that he took it at the fair and told Michele that he was going to send it to Natasha. Michele said "yeah, go ahead and send it to her." Betras was unaware of the conflict between the two sisters.

{¶14} Frank Susany testified that he was good friends with Michele. On the night of the phone call, he was making prank calls with friends, and either he or a friend made the call to Natasha as a "joke." He had Michele's phone at the time the call was made, and got Natasha's phone number from her phone. He testified that Michele did not tell him to make the phone call.

{¶15} Michele Frenchko-Nagy testified that in the past, she had sent a text message of a sexual nature from her boyfriend's phone to Natasha. She had never been told by Natasha not to contact her. Michele explained that she sent the Facebook invitation to go to the Traficant event because her grandmother liked him and Michele

4

wanted to take pictures. She explained that the Facebook posts merely related to activities with which she and Susany were involved. Regarding the picture with Natasha's boss, she testified that it was Betras' idea to take and send the picture, with which she agreed. She also denied asking Susany to make the phone call to Natasha.

{¶16} On May 14, 2013, a Magistrate's Decision was filed, finding that Natasha had proven, by a preponderance of the evidence, that Michele engaged in a violation of R.C. 2903.211 and that Natasha was entitled to a civil stalking protection order pursuant to R.C. 2903.214. The order was filed on the same date, effective for five years.

{¶17} Michele filed a Notice of Filing Objections to Magistrate's Decision on May 28, 2013. She filed Supplemental Objections to Magistrate's Decision on August 8, 2013, arguing, inter alia, that the "pattern of conduct," did not constitute stalking. Natasha filed a Response to the Objections on October 8, 2013.

{¶18} On January 15, 2015, the trial court issued a Judgment Entry overruling the Objections, except with respect to the imposition of a weapons restriction, which was removed in a modified protection order issued with the Judgment to replace the prior protection order.

{¶19} Michele timely appeals and raises the following assignments of error:

{¶20} "[1.] The trial court erred in granting a court protective order as against the manifest weight of the evidence insofar as the allegations at bar are insufficient to support the reasonable person standard of emotional distress.

{¶21} "[2.] The trial court erred in granting a court protective order as against the manifest weight of the evidence insofar as the allegations at bar are insufficient to

5

support a CPO because the basis of a 'pattern' involves independent actors, who no one proved acted at the behest of Michele Frenchko."

{¶22} Pursuant to R.C. 2903.214(C)(1), a person may seek a protection order based upon an "allegation that the respondent * * * engaged in a violation of [R.C. 2903.211, Menacing by Stalking] against the person to be protected by the protection order * * *." The petitioner must demonstrate, "by a preponderance of the evidence," that she is entitled to a civil protection order. *Tuuri v. Snyder*, 11th Dist. Geauga No. 2000-G-2325, 2002-Ohio-2107, ¶ 12.

{¶23} R.C. 2903.211 provides: "No person by engaging in a pattern of conduct shall knowingly cause another person to believe that the offender will cause physical harm to the other person or cause mental distress to the other person." R.C. 2903.211(A)(1).

{¶24} The "standard of review for whether the protection order should have been granted and thus whether the elements of menacing by stalking were established by the preponderance of the evidence entails a manifest weight of the evidence review." (Citation omitted.) *Needhamer v. Carlozzi*, 11th Dist. Lake No. 2010-L-015, 2010-Ohio-4562, ¶ 22. Weight of the evidence concerns "'the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other.'" (Citations omitted.) (Emphasis deleted.) *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 12.

{¶25} In her first assignment of error, Michele argues that the evidence was insufficient to support the "reasonable person" standard of "emotional distress" and, thus, the protective order was against the manifest weight of the evidence.

6

{¶26} The finding that Menacing by Stalking was committed requires that the party's conduct did "cause another person to believe that the offender will cause physical harm to the other person or cause mental distress to the other person." R.C. 2903.211(A)(1). "Mental distress" is defined as "[a]ny mental illness or condition that involves some temporary substantial incapacity," or "[a]ny mental illness or condition that would normally require psychiatric treatment, psychological treatment, or other mental health services." R.C. 2903.211(D)(2)(a) and (b).

{¶27} As an initial matter, we note that Michele's assignment of error states that the evidence was "insufficient to support the reasonable person standard of emotional distress." This is not the appropriate standard. "In determining whether the petitioner suffered mental distress, the focus is on the petitioner's fear, not that of an objective, reasonable person. * * * The court employs a subjective test, rather than an objective, reasonable person test." *Fortney v. Willhoite*, 11th Dist. Lake No. 2011-L-120, 2012-Ohio-3024, ¶ 43.

{¶28} Under that standard, the weight of the evidence supported the magistrate's determination, properly adopted by the trial court, that Natasha suffered the required mental distress from Michele's conduct. The testimony established that Natasha was distressed, afraid, went to the doctor and the police, and slept on the floor of her child's bedroom. Although it is not required to be proven that "a person requested or received psychiatric treatment, psychological treatment, or other mental health services in order to show that the person was caused mental distress," the fact that Natasha sought "treatment for the stress the respondent caused * * * is evidence of mental distress." R.C. 2903.211(E); *Fortney* at ¶ 41. Likewise, the fact that Natasha

7

contacted police to investigate the matter was also evidence of mental distress. *Fortney* at ¶ 41 (finding evidence of mental distress "where the respondent engages in conduct that frightens the petitioner to the point that she feels compelled to contact the police").

{¶29} Michele cites *Darden v. Fambrough*, 2013-Ohio-5583, 5 N.E.3d 712 (8th Dist.) for the proposition that mental distress related to the threat of losing one's job does not support a finding of menacing by stalking and that job loss is not a basis for a finding of a danger of bodily harm. Here, however, there is evidence to support more than just a fear of Natasha losing her job, as outlined above and, given that mental distress was shown, it was unnecessary to prove a fear of physical harm. R.C. 2903.211(A)(1) (a respondent must cause a belief of physical harm *or* cause mental distress).

{¶30} We also find *Baker v. Inman*, 5th Dist. Delaware No. 04CAE06045, 2004-Ohio-6133, to be distinguishable. There, mental distress was not found based on the fact that the victim expressed "no fears about leaving her home in pursuit of her daily life." *Id.* at ¶ 24. The fact that Natasha felt compelled to sleep on the floor, contact police, and seek treatment from her doctor, supported the additional testimony that she experienced mental distress. This is especially true given that the trier of fact was in the best position to evaluate Natasha's testimony and level of distress. *Cooper v. Manta*, 11th Dist. Lake No. 2011-L-035, 2012-Ohio-867, ¶ 37.

{¶31} The first assignment of error is without merit.

{¶32} In her second assignment of error, Michele argues that no pattern of conduct was proven, since two of the incidents involved other individuals' actions and the other two could not be found to have caused Natasha distress.

8

{¶33} The "pattern of conduct" required for a civil stalking protection order is defined as "two or more actions or incidents closely related in time." R.C. 2903.211(D)(1). When looking at a pattern of conduct, the court "must take into consideration everything, *i.e.,* * * * the phone calls, the thinly veiled threats, and the face-to-face meetings between the parties, 'even if some of [the respondent's] actions comprising this behavior, considered in isolation might not appear to be particularly threatening.'" (Citation omitted.) *Tuuri*, 2002-Ohio-2107, at ¶ 18.

{¶34} Michele argues specifically that both the phone call and the text message with the photograph were the actions of third parties. While the testimony does raise some question about whether Michele was involved in the text messaging of the photograph, evidence was presented to support the conclusion that Michele had responsibility in the phone call. Susany, who was a close friend of Michele, made the call to Natasha. Although he stated that Michele did not request that he make the call, the court was free to disbelieve that statement. The phone call received was similar to a call of a sexual nature made by Michele's boyfriend in 2008, a call which Natasha testified Michele admitted was made pursuant to her request. *See Fortney*, 2012-Ohio-3024, at ¶ 38 (incidents occurring two years earlier provided context for understanding subsequent conduct). It is reasonable to conclude that Michele was involved in Susany's phone call rather than that Susany happened to coincidentally choose Natasha's phone number out of Michele's phone to make a call of a sexual nature.

{¶35} Regarding the two Facebook posts, exactly what data was transmitted via Facebook about Susany is a source of conflict between the parties, with Michele portraying her posts as innocent and Natasha testifying that they provided links to her

private information. While it is unclear whether the links provided actually allowed Susany to access Natasha's private profile, this was Natasha's testimony. Regardless, it was not against the weight of the evidence for the magistrate to conclude that the act of posting links to the profile of a man with a known criminal record, who was ultimately discovered to have made the offensive phone call, when Natasha had requested no contact with Michele, could cause her mental distress. Michele's description of the incidents may also be questioned, given that it seems unbelievable that she merely "tagged" Susany's Facebook profile so he could view a post about craft supplies.

{¶36} While some of these events individually may not appear to be threatening, given Michele's past conduct and that three of the incidents involved a man with a known criminal history, we cannot find that the protection order was issued against the manifest weight of the evidence or in the absence of a pattern of conduct. *Tuuri*, 2002-Ohio-2107, at ¶ 18.

{¶37} The second assignment of error is without merit.

{¶38} For the foregoing reasons, the judgment of the Trumbull County Court of Common Pleas, granting Natasha a civil stalking protection order, is affirmed. Costs to be taxed against appellant.

TIMOTHY P. CANNON, P.J.,

CYNTHIA WESTCOTT RICE, J.

concur.

10