[Cite as *Beadnell v. McAdam*, 2016-Ohio-8207.]

STATE OF OHIO, JEFFERSON COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| RICHARD A. BEADNELL | ) | |
| | ) | |
| PETITIONER-APPELLEE | ) | |
| | ) | CASE NO. 15 JE 0022 |
| VS. | ) | |
| | ) | OPINION |
| ADAM DAVID MCADAM | ) | |
| | ) | |
| RESPONDENT-APPELLANT | ) | |

CHARACTER OF PROCEEDINGS:    Civil Appeal from the Court of Common Pleas of Jefferson County, Ohio Case No. 15 CV 357

JUDGMENT:    Reversed and vacated.

APPEARANCES:
For Petitioner-Appellee    Richard Beadnell, Pro-se
355 Third Street
Bergholz, Ohio 43908

For Respondent-Appellant    Attorney Craig Allen
500 Market Street, Suite 10
Steubenville, Ohio 43952

JUDGES:

Hon. Mary DeGenaro
Hon. Gene Donofrio
Hon. Carol Ann Robb

Dated:  December 15, 2016

DeGENARO, J.

{¶1} Respondent-Appellant, Adam David McAdam, appeals the September 17, 2015 judgment of the Jefferson County Court of Common Pleas granting Petitioner-Appellee, Richard A. Beadnell, a civil stalking protection order. Upon review, McAdam's assignment of error is meritorious as there was no evidence Beadnell believed McAdam would cause physical harm or had caused mental distress to Beadnell or his family. Accordingly, the judgment of the trial court is reversed and vacated.

{¶2} Beadnell and McAdam worked together at a manufacturing facility. On Dec. 6, 2014, the machine McAdam was operating broke down due to his operational error and Beadnell was called to repair it. McAdam claims Beadnell became angry, swearing and yelling at him for operating the machine improperly. The two men exchanged text messages about the incident after work. McAdam admitted his fault and wanted to make amends. Beadnell asked McAdam not to send any more messages yet McAdam continued to send texts. Beadnell believed McAdam did this intentionally, but McAdam claimed the multiple messages were the result of poor cell service that resulted with him resending the same message multiple times. Further Beadnell claimed McAdam continued to call against his wishes as well. Beadnell asked his union representative about filing harassment charges against McAdam and was referred to his human resources department, who told him they could do nothing because the conflict had originated outside of work.

{¶3} In April of 2015, McAdam's mother purchased a house next door to Beadnell's property and McAdam moved into the house in May. McAdam claimed not to have known where Beadnell lived prior to the purchase, although he made a point of going to Beadnell at work and telling him he had bought the house next to him.

{¶4} After McAdam moved in there were more confrontations. On or about August 13, 2015, two days after a contentious verbal exchange, Beadnell observed what appeared to be an arrow sticking out of the side of his house. McAdam denied responsibility. After an exchange of words the next day, Beadnell brought an unloaded rifle and handgun out of his house and placed them on the ground in

McAdam's sight and declared that if threatened he would defend himself. Beadnell pointed both weapons at McAdams and another individual.

{¶5} Days later, McAdam yelled, "F*** you" at Beadnell. Thereafter, Beadnell's wife, Tammy Jo, overheard the words, "I'm going to kill you, you're dead" coming from McAdam's property. McAdam claimed he never made such a statement to either of the Beadnells. McAdam does recall yelling at his puppy and a friend's dog for the two-week period his friend stayed with him; the dogs would fight and both men would have to yell at the dogs.

{¶6} Following these incidents, Beadnell filed a motion for a civil stalking protection order on August 18, 2015. A hearing was held before the magistrate on September 16, 2015. Beadnell and his wife both admitted that McAdam had never struck or threatened to strike them or their son, who was a friend of McAdams. Beadnell further testified that none of the texts he received were threatening, and despite the incident involving Beadnell's use of weapons, he was not afraid McAdams would hurt him.

{¶7} After the hearing, a limited CSPO signed by both the magistrate and judge was issued and served on McAdam requiring him not to trespass on Beadnell's property, not to initiate or have any contact with either Beadnell or his wife, and to have no communication with Beadnell except as required for work.

{¶8} McAdam presents a single assignment of error:

The trial court erred when it issued a civil anti-stalking [sic] protection order pursuant to RC 2903.214 finding that the appellant knowingly engaged in a pattern of conduct that caused Appellee mental distress as defined in RC 2903.211(D)(2).

{¶9} It is within a trial court's discretion whether or not to grant a civil protection order and the standard of review is manifest weight of the evidence. *Morton v. Pyles*, 7th Dist. No. 11 MA 124, 2012–Ohio–5343, ¶ 8. An appellate court examines whether each element of menacing by stalking was established by the

preponderance of the evidence, and will only reverse where the trier of fact clearly lost its way and created a miscarriage of justice. *Ramsey v. Pelliccioni*, 7th Dist. No. 14 MA 134, 14 MA 135, 2016–Ohio–558, ¶ 15.

**{¶10}** The CSPO was sought and issued because it was alleged that McAdam engaged in menacing by stalking. "No person by engaging in a pattern of conduct shall knowingly cause another person to believe that the offender will cause physical harm to the other person or a family or household member of the other person or cause mental distress to the other person or a family or household member of the other person." R.C. 2903.211(A)(1). McAdam argues on appeal that Beadnell failed to establish that McAdam caused mental distress to the Beadnell family. It is undisputed that Beadnell did not believe that McAdam would cause any physical harm. Beadnell testified the texts were not threatening and that he was not afraid McAdam would hurt him.

**{¶11}** The other basis for a CSPO is that McAdam caused mental distress, which is defined as: "Any mental illness or condition that involves some temporary substantial incapacity;" or "Any mental illness or condition that would normally require psychiatric treatment, psychological treatment, or other mental health services, whether or not any person requested or received psychiatric treatment, psychological treatment, or other mental health services." R.C. 2903.211(D)(2)(a) and (b). "[M]ental distress for purposes of menacing by stalking is not mere mental stress or annoyance." *Caban v. Ransome*, 7th Dist. No. 08 MA 36, 2009-Ohio-1034, ¶ 29. "[T]he test is whether mental distress was in fact caused." *Id.* ¶ 23.

**{¶12}** Beadnell presented no evidence of any psychological impairment that would qualify as mental distress. He professed, "I feel like a shut-in…Every time I go out he comes around." Beadnell asserted he told McAdam, he didn't want McAdam on his property, or around his family. Beadnell further testified that he repeatedly told McAdam to get off his property and the latter refused to leave. But the record contains no evidence that McAdam caused Beadnell actual mental distress as defined by the statute.

{¶13} The Magistrate's remarks at the conclusion of the September 16 proceedings indicated that he issued the CSPO because he believed McAdam's actions caused Beadnell "anxiety" and that those actions "continue[d] to irritate and irritate and irritate to the point where maybe it's [sic] gotten blown out of proportion." However, anxiety alone, without more, does not rise to the statutory level of mental distress.

{¶14} Accordingly, McAdam's assignment of error is meritorious. There was no evidence Beadnell believed McAdam would cause physical harm or had caused mental distress as defined by statute. Accordingly, the judgment in this case is reversed and vacated.

Donofrio, P. J., concurs.

Robb, J., concurs.