[Cite as *R.G. v. R.M.*, 2017-Ohio-8918.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| R.G., | ) | CASE NO. 17 MA 0004 |
| | ) | |
| PLAINTIFF-APPELLEE, | ) | |
| | ) | |
| | ) | |
| VS. | ) | OPINION |
| | ) | |
| R.M., | ) | |
| | ) | |
| DEFENDANT-APPELLANT. | ) | |

CHARACTER OF PROCEEDINGS:        Civil Appeal from the Court of Common Pleas of Mahoning County, Ohio Case No. 2015 CV 2342

JUDGMENT:        Affirmed.

APPEARANCES:

For Plaintiff-Appellee:        R.G., *pro se*
No Brief Filed

For Defendant-Appellant:        Atty. Charles E. Dunlap
7330 Market Street
Boardman, Ohio 44512

JUDGES:

Hon. Carol Ann Robb
Hon. Cheryl L. Waite
Hon. Mary DeGenaro

Dated: November 30, 2017

ROBB, P.J.

**{¶1}** Respondent-Appellant R.M. appeals the decision of the Mahoning County Common Pleas Court granting a civil stalking protection order as requested by Petitioner R.G. Respondent contends Petitioner failed to sustain her burden of showing he caused her to believe he would cause her physical harm or he caused her mental distress. The focus is on whether Petitioner's evidence satisfied the statutory definition of mental distress. This court concludes there was sufficient evidence that Respondent caused mental distress to Petitioner and the decision on mental distress was not contrary to the manifest weight of the evidence. Accordingly, the trial court's judgment is affirmed.

STATEMENT OF THE CASE

**{¶2}** On September 2, 2015, Petitioner filed a petition requesting a civil stalking protection order due to menacing by stalking. An ex parte protection order was granted, and a full hearing was scheduled to proceed before the magistrate. In a motion for a continuance, Respondent's counsel attached a letter counsel sent to Petitioner, which advised he would be unavailable on the date set for trial and stated, "On behalf of [Respondent], I am going to consent to the order of protection." The court granted this and a subsequent continuance also requested by Respondent. At the November 24, 2015 full hearing, Respondent did not consent to the protection order, and Petitioner presented her case pro se.

**{¶3}** The magistrate granted the civil stalking protection order, effective until November 24, 2020. The trial judge signed the order, which was filed on November 30, 2015. Respondent filed timely objections under Civ.R. 65.1(F)(3)(d)(i) on December 1, 2015 and requested the court reporter to prepare the transcript of proceedings. Respondent specified three objections: the magistrate should not have asked questions of Petitioner to assist her case; Petitioner did not sustain her burden of proving Respondent caused her to believe he would physically harm her or caused her mental distress; and the five-year term of the order was excessive. Nearly a year later, Respondent supplemented the objections with this court's *Ramsey* decision, which reiterated our position that a petitioner relying on the mental distress option

must show actual mental distress was caused. This supplement apparently prompted the trial court to rule on the objections.

{¶4}  On December 19, 2016, the trial court overruled the objections. The court found Petitioner supported her request with competent evidence that Respondent knowingly engaged in a pattern of conduct that caused her mental distress. Respondent (hereinafter Appellant) filed a timely notice of appeal on January 11, 2017. *See* Former Civ.R. 65.1(G) (which stayed the time for appealing upon the timely filing of objections and alternatively allowed the immediate appeal of a civil protection order signed by the magistrate and the trial court with or without objections).

ARGUMENT

{¶5}  Appellant's sole assignment of error alleges the court erred in granting the civil stalking protection order. The issue presented is framed as:

"Whether there was sufficient, credible evidence in which the Trial Court based its decision when it granted [Petitioner's] Motion for a Civil Stalking Protection Order because the elements of Ohio Rev. Code 2903.211 (D)(2) were not established."

{¶6}  Appellant's argument on appeal coincides with his second objection presented to the trial court, reiterating Petitioner did not sustain her burden to prove Appellant caused her to believe he would cause physical harm or he caused her mental distress. As to physical harm, he notes Petitioner testified Appellant never threatened her with physical harm. He points to his communications, wherein he tells Petitioner: "I would never hurt you." He claims Petitioner expressed no fear of physical harm. He concludes the record is devoid of any evidence he knowingly caused her to believe he would cause her physical harm.

{¶7}  As to mental distress, Appellant points out the law of this district requires the petitioner to have actually experienced mental distress. He emphasizes the testimony that Petitioner did not consult with a mental health provider and did not take any mental health prescriptions. As to her testimony that she discussed the situation with her family doctor, Appellant posits there is no indication she sought treatment from him. Although Petitioner testified she suffered mental distress, Appellant argues she failed to prove the elements of mental distress by showing her

mental condition involved a temporary substantial incapacity or her mental condition would normally require psychiatric or psychological treatment or other mental health services. He concludes his "conduct was clearly upsetting and annoying to" Petitioner and "bothered" her but not to the extent that she suffered mental distress as defined by R.C. 2903.211(D)(2)(a) or (b).

<u>LAW & ANALYSIS</u>

**{¶8}** Appellant appears to raise both sufficiency of the evidence and weight of the evidence as to the element of mental distress. Both standards can be applied when reviewing the issuance of a civil protection order if they are raised by the appellant. *Denney v. Sanders*, 1st Dist. No. C-150556, 2016-Ohio-5113, ¶ 14-20. *See also Vega v. Thomas*, 8th Dist. No. 104647, 2017-Ohio-298, ¶ 7-8; *A.M. v. D.L.*, 9th Dist. No. 16CA0059-M, 2017-Ohio-5621, ¶ 11, 19-20.[1] Appellate courts have often merged the review for civil protection orders because they assumed the concepts of weight and sufficiency merged in civil cases (and/or because only weight was raised). In 2012, the Supreme Court clarified that the concepts of weight and sufficiency do not merge in civil cases as the concepts are qualitatively and quantitatively different in civil cases just as they are in criminal cases. *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 9, 13-15, 23 (noting the confusion), applying *State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541 (1997).

**{¶9}** Sufficiency of the evidence is a legal question evaluating the adequacy of the evidence. *Thompkins*, 78 Ohio St.3d at 386. The question is whether the evidence, if believed, is sufficient proof of the elements; an evaluation of witness credibility is not involved in a sufficiency review. *State v. Yarbrough*, 95 Ohio St.3d 227, 240, 2002-Ohio-2126, 767 N.E.2d 216, ¶ 79, 82. Sufficiency involves the burden of production rather than the burden of persuasion. *See Thompkins*, 78 Ohio St.3d at 390 (Cook, J., concurring). The evidence and all rational inferences are evaluated in the light most favorable to the petitioner, and a judgment is not reversed on sufficiency grounds unless the reviewing court determines no rational fact-finder

---

[1] The abuse of discretion standard applies where the terms of the order are contested. *Rehfus v. Smith*, 7th Dist. No. 14 CA 897, 2015-Ohio-2145, ¶ 20, citing *Williams v. Hupp*, 7th Dist. No. 10 MA 112, 2011-Ohio-3403, ¶ 21.

could find the existence of the elements by the relevant burden of proof. *See, e.g., State v. Filiaggi,* 86 Ohio St.3d 230, 247, 714 N.E.2d 867 (1999); *State v. Goff*, 82 Ohio St.3d 123, 138, 694 N.E.2d 916 (1998).

{¶10} Weight of the evidence concerns "the inclination of the greater amount of credible evidence" supporting one side of an issue over the other as the fact-finder weighs the evidence in his mind. *Eastley*, 132 Ohio St.3d 328 at ¶ 12. It is not a question of mathematics, but is a question of the persuasiveness of the evidence or the effect of the evidence in inducing belief. *Id.* at ¶ 12, 19. When evaluating whether a judgment is contrary to the manifest weight of the evidence, every reasonable presumption must be made in favor of the judgment. *Id.* at ¶ 21, citing *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N .E.2d 1273 (1984), fn. 3 (and if the evidence is susceptible to more than one construction, the reviewing court is bound to interpret the evidence in a manner consistent with the judgment). The appellate court is to review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in the evidence, the fact-finder clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *See Eastley*, 132 Ohio St.3d 328 at ¶ 20, citing *Thompkins*, 78 Ohio St.3d at 387.

{¶11} A civil stalking protection order can be sought under R.C. 2903.214 where the respondent engaged in a violation of R.C. 2903.211, which defines menacing by stalking. *See* R.C. 2903.214(C). The petitioner has the burden to prove the elements of menacing by stalking by a preponderance of the evidence. *See Felton v. Felton*, 79 Ohio St.3d 34, 41-42 679 N.E.2d 672 (1997) (General Assembly intended to apply the usual preponderance of the evidence standard to civil domestic violence protection order where it failed to specify another standard). *Compare* R.C. 2903.214(E)(1)(a) (no standard set forth for civil stalking protection order) to (b) (clear and convincing evidence for electronic monitoring due to continuing danger). The menacing by stalking statute provides:

No person by engaging in a pattern of conduct shall knowingly cause another person to believe that the offender will cause physical harm to

the other person or a family or household member of the other person
or cause mental distress to the other person or a family or household
member of the other person.

R.C. 2903.211(A)(1). "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B).

{¶12} According to this court's precedent, the mental distress option requires the petitioner to have actually suffered mental distress, as compared to the physical harm option which merely requires the petitioner to believe the respondent "will cause" physical harm. *Caban v. Ransome*, 7th Dist. No. 08 MA 36, 2009-Ohio-1034, ¶ 22-24. Due to the three uses of the word "cause" in the statute, there is conflict in the appellate courts as to whether the phrase "cause another person to believe that the offender will" applies only to "cause physical harm" or also applies to "cause mental distress."

{¶13} Some courts have taken the same position as this court in *Caban* which required that mental distress was in fact caused. *See, e.g., Echemann v. Echemann,* 3d Dist. No 17-15-19, 2016-Ohio-3212, ¶ 37; *State v. Yoder*, 9th Dist. No. 15AP0017, 2016-Ohio-7428, fn. 2; *Smith v. Wunsch*, 162 Ohio App.3d 21, 2005-Ohio-3498, 832 N.E.2d 757, ¶ 18-19 (4th Dist). *See also Smith v. Hein*, 1st Dist. No. C-140529, 2015-Ohio-2749, ¶ 18 (where two separate concurrences expressed disagreement with their district's *Griga* holding); *Williams v. Flannery,* 8th Dist. No. 101880, 2015-Ohio-2040*,* ¶ 9; *State v. Werfel*, 11th Dist. No. 2006-L-163, 2007-Ohio-5198, ¶ 27.

{¶14} The opposing position essentially places a colon after "will" and holds menacing by stalking can be committed if the offender merely caused another to believe he will cause mental distress. *See, e.g., State v. Beckwith*, 8th Dist. No. 104683, 2017-Ohio-4298, ¶ 14; *Barrett v. Barrett*, 12th Dist. No. CA2016–04–033, 2017-Ohio-250, ¶ 18; *Fondessy v. Simon*, 6th Dist. No. OT-11-041, 2013-Ohio-3465, ¶ 18; *Griga v. DiBenedetto*, 1st Dist. No. C-102300, 2012-Ohio-6097, 988 N.E.2d 590, ¶ 5-13; *Cooper v. Manta*, 11th Dist. No. 2011-L-035, 2012-Ohio-867, ¶ 33; *Bloom v. Macbeth*, 5th Dist. No. 2007-COA-050, 2008-Ohio-4564, ¶ 11; *State v. Horsley*, 10th Dist. No. 05AP-350, 2006-Ohio-1208, ¶ 47; *Dayton v. Davis*, 136 Ohio

App.3d 26, 32, 735 N.E.2d 939 (2d Dist.1999). The Sixth District certified a conflict, but the Supreme Court dismissed the appeal sua sponte as having been improvidently certified. *Fondessy v. Simon*, 142 Ohio St.3d 147, 2014-Ohio-4638, 28 N.E.3d 1202 (with three dissenters; Justice Kennedy's dissent reviewed various appellate decisions).

**{¶15}** This court maintains the position that the statute's plain meaning is equivalent to placing a colon after "knowingly" so the offender must actually cause mental distress. *Beadnell v. McAdam*, 7th Dist. No. 15 JE 0022, 2016-Ohio-8207, ¶ 11; *Ramsey v. Pellicioni*, 7th Dist. Nos. 14 MA 134, 14 MA 135, 2016-Ohio-558, ¶ 20; *Caban*, 7th Dist. No. 08 MA 36 at ¶ 23-24. We observe how the two bare uses of "cause" in the statute represent the beginning of each of the two options. These two uses of "cause" in contrast to the one instance where cause has a helping verb mean only the physical harm option is modified by "to believe that the offender will cause * * *." *See* R.C. 2903.211(A)(1). In addition, as observed in *Caban*, by repeating "to the other person" after both physical harm and mental distress, rather than merely placing it at the end of the sentence, the legislature expressed that "to believe" does not modify "mental distress." *Caban*, 7th Dist. No. 08 MA 36 at ¶ 24.

**{¶16}** We proceed to address the particulars of the term "mental distress", which is statutorily defined as either of the following:

(a) Any mental illness or condition that involves some temporary substantial incapacity;

(b) Any mental illness or condition that would normally require psychiatric treatment, psychological treatment, or other mental health services, whether or not any person requested or received psychiatric treatment, psychological treatment, or other mental health services.

R.C. 2903.211(D)(2).

**{¶17}** This definition of mental distress provides a "fairly stringent test" which is more than mere mental stress or annoyance. *Caban*, 7th Dist. No. 08 MA 36 at ¶ 29, 34. A temporary incapacity is substantial if it significantly impacts the petitioner's daily life, and evidence of changed routine is pertinent. *Ramsey*, 7th Dist. No. 14 MA

134 at ¶ 21. An inability to sleep or concentrate on work can qualify as a temporary substantial incapacity and can also constitute a condition that would normally require mental health services. *See Horsley*, 10th Dist. No. 05AP-350 at ¶ 48. Although the statute explicitly does not require the victim to seek mental health services, the victim's consultation with a physician or other mental health provider can support a finding of mental distress. *See, e.g., Frenchko v. Frenchko-Nagy*, 2015-Ohio-4546, 42 N.E.3d 829, ¶ 28 (11th Dist.). The fact-finder can rely on personal experience and knowledge to determine if the offender caused the requisite mental distress to the victim. *Id.* at ¶ 29.

<u>FACTUAL REVIEW & ANALYSIS</u>

**{¶18}** Here, a prior petition for a civil stalking protection order filed by Petitioner resulted in the parties signing a no-contact agreement which was entered as an order of the court and which provided for no contact between the parties for a period of one year. (Tr. 6). Petitioner testified she filed a second petition for a civil stalking protection order after Appellant repeatedly violated the no-contact order by sending communications through email and regular mail and by sending gifts. (Tr. 7, 10-11). She expressed regret for not seeking court assistance earlier when Appellant first began violating the no-contact agreement, but she kept hoping he would stop contacting her. (Tr. 15).

**{¶19}** Petitioner appeared pro se. She submitted five cards Appellant sent her through regular mail, which contained preprinted and handwritten messages. (Pet. Ex. 2). Petitioner also indicated Appellant drove down her street and could be spotted in parking lots on her drive home. (Tr. 7, 17). She said he left plants, wine, and other items at her home. (Tr. 13). He also sent gifts to her family members. (Tr. 14). She submitted a letter from a bank disclosing that he asked his trust officer to ask Petitioner to keep the bank informed about any future changes of address (as she was named as one of his beneficiaries). (Pet. Ex. 3).

**{¶20}** She provided the court with emails Appellant sent her from February through August 2015. (Pet. Ex. 1). As it approached the one year anniversary of their relationship ending, his email communications increased. On May 13, 2015, he advised, "yesterday was one year…it[']s been one year of hell...loneliness and

sadness." Although she did not respond to any of these emails, he continued his campaign, sending over 60 emails from May through August 2015. (Pet. Ex. 1).

{¶21} Appellant's communications contained obsessive expressions of love, longing, and loneliness. He extended various invitations to dinner and vacation. He said, "I will never hurt you or try to hurt you" (in caps) and reminded her of this throughout the communications. His attorney emphasizes this language as showing there was no threat of physical harm or reason to fear physical harm. Appellant also repeated, "i would give my life so you could live." He stated, "as long as I am alive you will never have to worry" while also indicating she would be enriched by his death. He explained, "there will NEVER EVER be anyone to replace you." In one of the last emails before she filed this action, he said, "You made my life complete and that's what I want to do for you. I LOVE YOU MORE THAN YOU [K]NOW." The next day, although she never responded to any of the emails, he asked her if she wanted to go to dinner (at an out of town restaurant) that very night. It was at this time, on August 30, 2015, that she finally responded: "[R.M.], stop contacting me! Leave me alone!" He responded, and she filed the within action, which ended the communications.

{¶22} Petitioner urged the court that the continued contact after the prior order "has to stop" noting the evidence showed it "would never have stopped" if she had not filed this action. (Tr. 7, 16). She testified the emails were "very concerning" and expressed alarm he would continue contacting her after the court order. (Tr. 7, 18). She said, "Absolutely it's caused me emotional distress." (Tr. 16). When the court further inquired if the conduct caused her mental distress, she responded:

> Absolutely. Read the emails. It's alarming someone would be contacting me long after the relationship was over. When I drive home every night, I have to scan the parking lots, make sure he's not sitting somewhere, because that was past behavior. I don't feel safe in my own home. When I go out to restaurants, I have to make sure he's not there. I'm a single woman that lives alone. This is not normal behavior to keep contacting me.

(Tr. 17). She thereafter added:

My life has changed completely since--in the past two years. My habits, my behaviors, the fact that I don't feel safe, having to constantly be aware of my surroundings. And I am confident that this would have never stopped. Put me in a very difficult situation. This is of course not pleasant to be here today, but it's something that I feel I have to do for my own safety * * *. I think my inaction could have caused problems down the road for my own safety, and I feel I have to do what I can possible do to protect myself. (Tr. 19-20).

Twice she tried to relate something about a detective, but was not permitted to do so. (Tr. 7, 20). In closing, she said she wanted this to stop as "I can't live like this anymore not knowing if he's down the street or another email is going to come through or if he's even going to listen to the order that's in place." (Tr. 23).

{¶23} When the court asked if she addressed the problem with a healthcare professional, she said, "Yes, my family doctor I have, Dr. [B.]. Yes, I have spoken to him about this." She also discussed the situation with her parents, sisters, brother, and friends. (Tr. 19). On cross-examination, defense counsel asked: "Are you presently under the care of any mental health providers today?" and "Have you taken any type of prescriptions for mental health over the last year?" Petitioner answered both questions in the negative. (Tr. 21).

{¶24} Defense counsel also asked if Appellant "ever threatened you physically with bodily harm?" Petitioner answered, "No, he has not." (Tr. 21). We note explicit or direct threats are not required to prove menacing by stalking. *State v. Smith*, 126 Ohio App.3d 193, 200, 709 N.E.2d 1245 (7th Dist.1998). Although Petitioner did say she feared for safety, it does not appear the trial court found Appellant knowingly caused her to believe he would cause her physical harm. In overruling Appellant's objections, the trial court found Petitioner supported her request for a protection order with competent evidence Appellant knowingly engaged in a pattern of conduct that caused her mental distress. The court made no finding on the alternative of causing her to believe he would cause her physical harm. Petitioner did not file an appellee's brief asking us to uphold the trial court's decision on alternate grounds.

**{¶25}** As such, we move to the mental distress option for granting a civil stalking protection order. On this element, Appellant contests only whether mental distress was in fact caused by the pattern of conduct he employed. He suggests Petitioner suffered mere mental stress and annoyance which did not rise to the level of mental distress as defined by R.C. 2903.211(D)(2)(a) or (b). He emphasizes the testimony that Petitioner was not under the care of a mental health provider (on the day of the hearing) and did not take any prescription medications for mental health in the past year.

**{¶26}** However, this evidence is not dispositive. In asking whether a respondent's pattern of conduct caused a mental condition "that would normally require psychiatric treatment, psychological treatment, or other mental health services," the reference to treatment or services does not only encompass prescription medications but can also include formal therapy or counseling or even advice by one who provides mental health services on how to handle the mental condition. In any event, the victim need not have sought such services. R.C. 2903.211(D)(2)(b) ("whether or not any person requested or received psychiatric treatment, psychological treatment, or other mental health services"). *See also* R.C. 2903.211(E) ("The state does not need to prove in a prosecution under this section that a person requested or received psychiatric treatment, psychological treatment, or other mental health services in order to show that the person was caused mental distress as described in division (D)(2)(b) of this section."). Furthermore, a family physician can provide mental health services. *See, e.g., Frenchko,* 2015-Ohio-4546 at ¶ 28 (the victim's consultation with a physician can support a finding of a mental distress). Petitioner consulted with her family doctor about the situation caused by Appellant's continual violation of the no-contact consent entry.

**{¶27}** A fact-finder can rely on his own experience and knowledge to determine if the offender caused mental distress, as statutorily defined, to the victim. *Caban,* 7th Dist. No. 08 MA 36 at ¶ 29. *See also Elkins v. Manley*, 8th Dist. No. 104393, 2016-Ohio-8307, ¶ 15 ("the testimony of the victims themselves as to their fear is sufficient to establish mental distress"). The trial court found Petitioner met her burden to prove by a preponderance of the evidence she suffered mental distress

as a result of Appellant's pattern of conduct. This burden is less than the clear and convincing standard and much less than the beyond a reasonable doubt standard used in criminal menacing by stalking cases, where the same statute is used to charge a criminal offense. *See* R.C. 2903.211(B).

**{¶28}** Appellant's one-way communications became incessant, were unrealistic, and contained some odd expressions on giving his life, considering Appellant was an ex-boyfriend with a no-contact consent agreement in place. A key factor distinguishing this case is that Appellant engaged in the pattern of conduct during the existence of the no-contact consent entry. The mental distress experienced from the obsessive communications would be expected to be greater in cases where a no-contact agreement and order exists (due to Petitioner's prior filing of a petition for a civil stalking petition order against Appellant) than in cases where no such order and history exists.

**{¶29}** We note Petitioner did not mention a lack of sleep or inability to concentrate at work, which can support a finding of a temporary substantial incapacity or a mental condition normally requiring mental health services. *See Horsley*, 10th Dist. No. 05AP-350 at ¶ 48. Nevertheless, Petitioner testified the pattern of conduct Appellant foisted upon her caused her mental distress. *Compare Caban*, 7th Dist. No. 08 MA 36 at ¶ 29 (noting the victim did not testify the conduct caused her mental distress). Petitioner also expressed she was alarmed, very concerned, and feared for her safety. She disclosed her life "has changed completely" as a result of Appellant's conduct; she said she changed her habits and her behaviors. *See Ramsey*, 7th Dist. No. 14 MA 134 at ¶ 21 (evidence of changed routine is pertinent). A reasonable trier of fact could conclude Petitioner's daily life has been affected in a significant manner. *See id.* (temporary incapacity is substantial if it significantly impacts the petitioner's daily life).

**{¶30}** Furthermore, Petitioner revealed feeling as though she is required to "constantly be aware of my surroundings" and she does not feel safe. Hypervigilance can be viewed by a reasonable fact-finder as a mental condition which would normally require mental health services. A person who is experiencing a hypervigilant and fearful state of mind due to receipt of a barrage of unanswered love

letters from a former boyfriend would reasonably seek counseling in order to ascertain if she is overreacting or to gain insight or empathy. "Additionally, testimony that the respondent's conduct caused considerable fear and anxiety in the petitioners can support a finding of mental distress." *Ramsey*, 7th Dist. Nos. 14 MA 134, 14 MA 135 at ¶ 21. This court concludes there was sufficient evidence of mental distress under the particular circumstances of this case.

**{¶31}** As for weight of the evidence, the trial court occupies the best position to view the demeanor, voice inflection, and gestures and weigh the credibility of a witness. *See Myers v. Garson*, 66 Ohio St.3d 610, 615, 614 N.E.2d 742 (1993); *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80, 10 OBR 408, 461 N.E.2d 1273 (1984). The court did not "clearly los[e] its way" and create a "manifest miscarriage of justice" in believing Petitioner's testimony, making reasonable inferences, and finding her fear and distress genuine. *See Eastley*, 132 Ohio St.3d 328 at ¶ 20, citing *Thompkins*, 78 Ohio St.3d at 387. In conclusion, the civil stalking protection order was supported by sufficient evidence, and its issuance was not contrary to the manifest weight of the evidence. In accordance, the trial court's judgment is affirmed.

Waite, J., concurs.

DeGenaro, J., concurs.